UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

In re                                                               Chapter 11

      SIMRY REALTY CORP,                          Case No.: 26-11409 (PB)

                   Debtor.

--------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MICHELLE HARUVI FOR AN ORDER (I) DISMISSING BANKRUPTCY CASE PURSUANT 11 U.S.C. § 1112(b)(1), AND (II) GRANTING RELATED RELIEF**

**KATSKY KORINS LLP**
605 Third Avenue
New York, New York 10158
Tel: (212) 953-6000
Steven H. Newman, Esq.
Robert A. Abrams, Esq.
snewman@katskykorins.com
rabrams@katskykorins.com

*Attorneys for Michelle Haruvi*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 4

    A.    The Parties and Simry Realty's Pre-2022 Business.................................................4

    B.    The Unlawful Transfer and Defendants' Stripping of Simry Realty of Its Assets .............4

    C.    The Derivative Action And The Appellate Division's Derivative Action Validation
        Order ...........................................................................................................................6

    D.    Scorched-Earth Campaign of Harassment Against Michelle ............................................8

        1.    The Eviction Proceedings. .................................................................................8

        2.    The Malicious Prosecution Action.......................................................................8

        3.    The $8,692,647 Capital Call ...............................................................................9

    E.    The Attempted Freeze Out Merger And the Injunction Action ........................................9

        1.    The July 1, 2025 TRO...........................................................................................10

        2.    The July 21, 2025 Decision and Order. ...............................................................10

    F.    The Appeal of the Preliminary Injunction Order............................................................11

    G.    The Two Foreclosure Actions And The Intervention Order.............................................11

    H.    Avoidance of Aileen's Deposition and a Contempt Motion Against Hungerford.............13

    I.    The Bankruptcy Filing and Removal of the Derivative Action As the Latest Evasive
        Maneuver to Avoid Adverse Rulings ...........................................................................13

ARGUMENT ........................................................................................................................... 15

POINT I: THE PETITION IS INVALID SINCE IT WAS FILED WITHOUT THE
        REQUIRED CORPORATE AUTHORITY................................................................... 15

POINT II: DEFENDANTS CAUSED SIMRY REALTY TO FILE A VOLUNTARY
        PETITION IN BAD FAITH......................................................................................... 18

    A.    Simry Realty Is a Single Asset Entity With No Going Concern to Reorganize ...............20

    B.    No Unsecured or Secured Creditors………………………...........................………………… 20

    C.    The Filing Is a Two-Party Dispute That Belongs in State Court......................................21

    D.    The Timing of Petition Evidences Intent to Avoid a Deposition, Halt Adverse
        Litigation, and Manipulate the Forum ........................................................................22

    E.    The Debtor Has No Cash Flow....................................................................................24

F.    The Debtor Cannot Meet Current Expenses ........................................................24

G.    No Employees.......................................................................................................24

H.    This Bankruptcy Case Is Unauthorized and An End-Run of the Preliminary Injunction
      Order ....................................................................................................................24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership)*,
113 F.3d 1304 (2d Cir. 1997) ................................................................................. 3, 15, 18

*Furness v. Lilienfield,* 35 B.R. 1006 (D.Md. 1983) ........................................................ 19

*Haruvi v. Hungerford*, 233 A.D.3d 478 (1st Dept. 2024)...................................... 6, 7, 20

*In re 167 W. 133rd St. Hous. Dev. Fund Corp.*,
2018 WL 4637460 (Bankr. S.D.N.Y. Sept. 25, 2018)........................................... 15, 16

*In re 652 W. 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005)................................... 19

*In re Aamagin Prop. Group*, LLC, CV 23-383-JWD-RLB,
2024 WL 457801 (M.D.La. Feb. 6, 2024).................................................................. 16

*In re D&G Constr. Dean Gonzalez. LLC*, 635 B.R. 232 (Bankr. E.D.N.Y. 2021)....................... 24

*In re HBA East, Inc.,* 87 B.R. 248 (Bankr. E.D.N.Y. 1988) .......................................... 19

*In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), *affd sub nom. In re JJ ARCH LLC,
Debtor.*, 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026)............... 15, 17, 19

*In re JJ Arch LLC.*, 663 B.R. 258 (Bankr. S.D.N.Y. 2024)........................... 15, 17, 19, 22, 24, 25

*In re Murray*, 900 F.3d 53 (2d Cir. 2018)..................................................................... 19

*In re NNN 123 N. Wacker, LLC*, 510 B.R. 854 (Bankr. N.D. Ill. 2014)....................... 16

*In re Pasta Bar By Scotto II, LLC*,
2015 WL 7307246 (Bankr. S.D.N.Y. Nov. 19, 2015) ................................... 16, 19, 22

*In re Richardson Foods, Inc.*, 659 B.R. 154 (Bankr. S.D.N.Y. 2024)........................... 17

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ........................................... 19, 22

*Lewis v. Steinhart*, 40 A.D.2d 817 (1st Dep't 1972) ..................................................... 17

*Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945) .................... 17

*Stile v. Antico*, 272 A.D.2d 403 (2d Dep't 2000)......................................................... 17

**Statutes**

11 U.S.C. § 1112 ................................................................................................ 1, 15, 16

Bankruptcy Code § 101 ........................................................................................... 14

Business Corporation Law § 601 ............................................................................ 18

Business Corporation Law § 623 ............................................................................ 10

Business Corporation Law § 909 ....................................................................... 6, 7, 21

Michelle Haruvi ("**Michelle**") respectfully submits this Memorandum of Law in support of her motion for an order, pursuant to 11 U.S.C. § 1112(b), dismissing the Chapter 11 petition of Simry Realty Corp. ("**Simry Realty**" or the "**Debtor**").

## PRELIMINARY STATEMENT[1]

The Debtor's case must be dismissed for cause because it was filed without corporate authority and in bad faith.

The Debtor's principals, led by Peter Hungerford ("**Hungerford**"), Aileen Haruvi ("**Aileen**"),[2] and Michelle's father, Arthur Haruvi ("**Arthur**"; together with Hungerford and Aileen, collectively, the "**Defendants**"), did not file this Chapter 11 case to "reorganize" the Debtor's financial affairs. Rather, it is Defendants who wrongfully denuded Simry Realty of all of its assets over four years ago, including seven mixed-use properties, by unlawfully transferring Simry Realty's assets to seven SPEs (defined below) that Defendants indirectly own and control, all at the expense of the Debtor and its minority shareholders, including Michelle. Indeed, other than holding a substantially diluted indirect interest in Simry Holding LLC ("**Simry Holding**"), the holding company that owns each SPE, Simry Realty is now a corporate shell. It has no employees, no ongoing business operations, no revenue, no secured debt, and few (if any) legitimate unsecured creditors.

To be clear, the instant bankruptcy case was not filed to *recover* the wrongfully transferred assets -- the Debtor's admits as much in its Petition. The purpose of this bad faith

---

[1] Capitalized terms herein which are not otherwise defined herein shall have the meaning given to such terms in the Declaration of Joanna A. Diakos ("**Diakos Decl.**") submitted herewith. References to Exhibits herein refer to the Exhibits attached to the Diakos Decl.

[2] Aileen is Michelle's sister. Aileen signed the Debtor's Petition and is a defendant in several of the pending state court actions.

bankruptcy filing is to *prevent* these transfers from being rescinded and to "cash out" Michelle's minority interest at a substantial discount and remove her as a shareholder - - actions that the State Court expressly enjoined Defendants from carrying-out pursuant to the Preliminary Injunction Order (defined below). Indeed, contrary to the Debtor's stated goal, Michelle seeks to recover Simry Realty's assets by way of rescission in the Derivative Action which claims have been validated by the Appellate Division, First Department.

One day after Simry Realty filed its Petition, Defendants removed the Derivative Action from the State Court to this Court as a litigation tactic. Based on their own admission, Defendants seek to end-run and escape the jurisdiction of the State Court and Justice Andrew Borrok's courtroom because Justice Borrok (and the First Department) has seen through Defendants' machinations, issued multiple adverse rulings against them, and is currently presiding over four (4) related actions resulting from their nefarious scheme (*i.e.*, the Derivative Action, the Injunction Action (defined below), and two related Foreclosure Actions (defined below)).[3] This bankruptcy case is merely the latest in a documented series of flagrantly abusive maneuvers orchestrated by Defendants and their partners against Michelle to end-run the Appellate Division's Derivative Action Validation Order (defined below) and terminate Michelle's interest in Simry Realty, including baseless eviction proceedings (dismissed), a malicious prosecution action (dismissed), and a freeze out merger plan (preliminary enjoined), each designed to intimidate and/or deprive Michelle of her shareholder rights and derivative claims that threaten Defendants' self-interested plans.

The timing of this bankruptcy filing is further evidence of bad faith. Over three (3) years

---

[3] To the extent that the Court does not dismiss this bankruptcy filing, Michelle has alternatively requested the Court to, among other things, abstain and remand the Derivative Action to State Court which action was pending before Justice Borrok who is intimately familiar with the pending litigations.

have passed since the Derivative Action was commenced, seven (7) months since the Foreclosure Actions were filed, and four (4) months since the Notices of Pendency were extended; yet, this bankruptcy was filed (i) only after a string of adverse rulings in the State Court, (ii) on a Sunday, the day before a scheduled deposition of Aileen to answer for her conduct, (iii) only a few weeks before facing a hearing in the Injunction Action seeking to sanction certain defendants therein (and the Goldberg Weprin firm itself) for failing to comply with discovery orders, (iv) before Justice Borrok was to conduct oral argument on Michelle's second motion to compel discovery in the Derivative Action, and (v) two weeks after oral argument on Defendants' appeal of the Preliminary Injunction Order where it appeared that the First Department was likely to affirm Justice Borrok's Preliminary Injunction Order enjoining Defendants and others from taking acts to extinguish Michelle's shares in Simry Realty.

Cause exists to dismiss this case because the bankruptcy filing was not authorized by a properly constituted Board of Directors. As the State Court already determined, Simry Realty is not authorized to act because its Articles of Incorporation requires that Simry Realty have at least three (3) members on its board of directors. Here, however, Arthur admits in the Petition that he is the "***Sole Director***" of Simry Realty. Therefore, the instant bankruptcy filing was not properly authorized as a matter of law. For this reason alone, this case should be dismissed. If the Court agrees, it need not look any further.

Even if the filing had been properly authorized (which it was not), it was filed in bad faith. Under the Second Circuit's well-established bad-faith-filing doctrine, articulated in *C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership)*, 113 F.3d 1304 (2d Cir. 1997), a Chapter 11 case must be dismissed where a petition was filed not to reorganize but to gain a litigation advantage, to frustrate an adversary's rights, or to manipulate the forum. As

- 3 -

detailed below, this bankruptcy filing represents the epitome of a bad faith filing.

For all these reasons, the Court should dismiss this bankruptcy case for cause.

## BACKGROUND

### A. The Parties and Simry Realty's Pre-2022 Business

Simry Realty is a family-owned New York corporation that, for decades, profitably owned, managed, and maintained seven mixed-use and residential real estate properties in Manhattan (the "**Simry Realty Properties**"). Diakos Decl. ¶¶ 5-6. The Simry Realty Properties were part of a larger portfolio of approximately 30 properties (the "**Haruvi Portfolio**"); the remaining 23 properties were held through other entities owned by Arthur and his brother Abraham Haruvi ("**Abraham**"). Diakos Decl. ¶ 7.

Michelle owns approximately 17.73% of Simry Realty's outstanding shares. Diakos Decl. ¶ 93; see also, Notice of Removal **Exhibit 52**. Arthur is Simry Realty's President and is currently its sole director. Diakos Decl. ¶ 11; see also, **Exhibit 50** at PDF p. 11 (attaching Corporate Resolution); Notice of Removal, **Exhibit 52** at PDF 2. Before May 2022, Arthur owned approximately 14.5% of Simry Realty; Abraham owned 50% and served as an officer and director. Diakos Decl. ¶ 93; see also **Exhibit 52** at PDF 2. Hungerford is the sole member of PH Realty NY Holdings LLC ("**PH Realty**"); before May 2022, Hungerford had no ownership interest in Simry Realty. **Exhibit 1** ¶10 (First Amended Complaint).

### B. The Unlawful Transfer and Defendants' Stripping of Simry Realty of Its Assets

On May 13, 2022, and without any prior notice to Michelle, Simry Realty purported to transfer all of its right, title, and interest in the Simry Realty Properties to seven newly formed special-purpose entities (the "**SPEs**"), each formed to hold one property (the "**Transfer**"). **Exhibit 1** ¶¶28-30. The deeds were executed by Hungerford as a purported "authorized

- 4 -

signatory" of Simry Realty. **Exhibit 1**, ¶ 192.

In "exchange" for transferring the ownership and management of the Simry Realty Properties -- *i.e.*, its entire business -- Simry Realty received only 10% of the common membership interests of Simry Holding LLC ("**Simry Holding**"), and 100% of the preferred membership interests. The SPEs are wholly owned by Simry Holding. Ninety percent (90%) of Simry Holding's common membership interests is now owned by Jade Venture Partners LLC ("**Jade Venture**"), whose members are Jade Realty Partners LLC ("**Jade Realty**") (which owns 95%) and PH Realty (which owns 5%). Arthur purports to own 100% of Jade Realty. **Exhibit 1** ¶¶ 56-63.

The net effect of this structure was to dramatically increase Arthur's indirect economic interest in the Simry Realty Properties and to consolidate Aileen's and Hungerford's control over the Simry Realty Properties, at the direct expense of Simry Realty and its minority shareholders, including Michelle, while simultaneously removing those assets from Simry Realty's balance sheet. **Exhibit 1** ¶ 63.

The Transfer was part of a larger transaction in which the Haruvi Portfolio was loaded up with more than $180 million in mortgage loans and Arthur bought out Abraham's interests in the Haruvi Portfolio for approximately $80 million. All of the properties -- including the Simry Realty Properties -- were encumbered with this $180 million in debt. **Exhibit 1**, ¶ 32. Importantly, neither Simry Realty nor Michelle is a party to, or a guarantor of, such loans. Diakos Decl. ¶ 90, **Exhibit 50** at PDF 15, ¶ 13 (LBR 1007-2 Declaration).

To effectuate this scheme, Arthur and Abraham executed an irrevocable proxy and voting agreement dated May 13, 2022 (the "**Voting Agreement**"), under which Arthur could vote all of Abraham's shares, giving him effective control of approximately 64.5% of Simry Realty's

outstanding shares. **Exhibit 1**, ¶ 34**; Exhibit 3** (Voting Agreement).

The Transfer denuded Simry Realty of all its assets for no remotely equivalent consideration, terminated its real-estate business, and left it unable to make the distributions it had historically made to shareholders. Diakos Decl. ¶ 15, **Exhibit 1 ¶¶** 86-87. Michelle received no notice of the Transfer before it occurred and no notice of any shareholder vote; she learned of it approximately three months later, in August 2022. Diakos Decl. ¶ 16, **Exhibit 1**, ¶¶ 2, 3, 36, 43, 51, 52, 76.

### C. The Derivative Action And The Appellate Division's Derivative Action Validation Order

On February 23, 2023, Michelle commenced an action in the Supreme Court, New York County (the "**State Court**"), styled *Michelle Haruvi, suing individually and derivatively on behalf of Simry Realty Corp. v. Peter Hungerford, et al.,* Index No. 651033/2023 (the "**Derivative Action**"), asserting claims individually and derivatively on behalf of Simry Realty against Arthur, Hungerford, the SPEs, and others, seeking, *inter alia*: (a) rescission of the Transfer under Business Corporation Law ("**BCL**") § 909 (governing the sale of substantially all of a corporation's assets ); (b) declaratory relief quieting title to the Simry Realty Properties in Simry Realty; and (c) damages for breach of fiduciary duty. Michelle simultaneously filed notices of pendency against each of the Simry Realty Properties. Diakos Decl. ¶ 16, **Exhibit 5**.

The trial court (Borrok, J.) initially granted defendants' motion to dismiss and cancelled the notices of pendency. Diakos Decl. ¶ 18; and **Exhibit 6**.  However, by Decision and Order dated December 10, 2024 (the "**Derivative Action Validation Order**"), the Appellate Division, First Department reversed. Diakos Decl. ¶ 20-21; and **Exhibit 9**. *See also, Haruvi v. Hungerford*, 233 A.D.3d 478 (1st Dept. 2024). The First Department held:

> **(a)** The Transfer "was a sale or disposition subject to Business Corporation Law §
> 909(a)"; because Simry Realty's sole business had been owning and operating

the residential properties, the sale was "not in the ordinary course of its actual business." *Id*. at 478.

**(b)** There are "issues of fact" as to whether Michelle received the notice required under § 909, precluding dismissal of her direct and derivative claims. *Id*.

**(c)** If the Transfer violated BCL § 909, the transfers of title are "not voidable but void" *Id*. 478-479 -- meaning they can be rescinded regardless of the passage of time and regardless of what occurred in the interim, including any purported mortgage.

**(d)** Michelle stated valid claims for rescission, declaratory relief, breach of fiduciary duty, slander/quiet title, and aiding and abetting breach of fiduciary duty. *Id*. at 479.

**(e)** The notices of pendency should not have been cancelled (and were reinstated; later extended through February 28, 2029). *Id*. at 478.

See **Exhibit 9**. On July 24, 2025, Michelle filed a Verified First Amended Complaint, continuing the rescission and quiet-title derivative claims, naming additional defendants, and asserting additional claims, including a declaratory judgment claim that the $8.6 million capital call (as addressed below) made to Michelle was void *ab initio*. **Exhibit 1**.

Contrary to Aileen's assertion in her Local Bankruptcy Rule 1007-2 declaration that the Derivative Action (commenced over three (3) years ago) has been "protracted" due to Michelle's volition (**Exhibit 50** at ¶ 8), it is actually Defendants who have delayed the Derivative Action and the Injunction Action by repeatedly failing to comply with their discovery obligations, resulting in a contempt motion against Hungerford and his counsel, Goldberg Weprin (the Debtor's purported counsel in this case) for their failure to search for documents from an agreed upon custodian, and two motions by Michelle to compel Hungerford and PH Realty to produce thousands of documents wrongfully withheld from Michelle under the guise of privilege. Diakos Decl. ¶¶ 56-65; 71-76. Indeed, in a Decision + Order on Motion dated March 2, 2026, Justice Borrok found that certain defendants wrongfully withheld over 10,000 documents from

- 7 -

production and otherwise failed to produce documents in connection with the court-ordered supplemental discovery. Justice Borrok further concluded that "Given the admonition of the Court, the order [compelling a supplemental production of documents] appears to have been willfully and contumaciously flouted in attempt to stymie discovery in this case." **Exhibit 35**, p. 3. Despite that order, those defendants still failed to comply with their discovery obligations, thus requiring Michelle to file a second motion to compel and for sanctions. Diakos Decl. ¶ 63-65.

### D. Scorched-Earth Campaign of Harassment Against Michelle

Unable to defeat Michelle's claims on the merits, and facing the prospect that the Transfer will be voided, Defendants waged a relentless campaign of harassment and intimidation against Michelle designed to coerce her into abandoning her claims. Each tactic has been rejected by the courts.

1.    **The Eviction Proceedings**. In September 2022, within one month of Michelle learning of the Transfer and demanding information, one of the SPEs filed a baseless proceeding (LT-314877-22/NY) against Michelle seeking to evict her and her family from an apartment her parents had given Michelle. That action was dismissed in January 2023 (Diakos Decl. ¶¶ 25-28; and **Exhibit 11**) only to be immediately replaced by a new proceeding (LT-304452-23/NY). The second eviction proceeding was also dismissed in Michelle's favor; the court granted a directed verdict dismissing the case in its entirety. See Diakos Decl. ¶ 26 and **Exhibit 12**.

2.    **The Malicious Prosecution Action**. During the pendency of the appeal from the Derivative Action dismissal, Simry Realty, Hungerford, and related entities filed a malicious prosecution action against Michelle styled *Simry Realty Corp. et al. v. Michelle Haruvi*, Index No. 654273/2024, alleging her notices of pendency clouded title and prevented refinancing, and

seeking damages of not less than $10 million. **Exhibit 13**. Even after the First Department had vindicated Michelle's claims, defendants refused to voluntarily dismiss the Malicious Prosecution Action with prejudice. On April 9, 2025, the court granted Michelle's motion to dismiss such action with prejudice. See Diakos Decl. ¶ 27-28 and **Exhibit 14**.

> 3.      **The $8,692,647 Capital Call**. One week after the Malicious Prosecution Action's dismissal, Michelle received a capital call notice from Simry Realty demanding a $8,692,647 capital contribution by April 30, 2025, purportedly to pay portions of the over $180 million in loans attributable to the restructured portfolio -- despite the undisputed fact that neither Michelle nor Simry Realty is a party to or a guarantor of those loans. See Diakos Decl. at ¶¶ 29-32 and **Exhibit 16**. The capital call was a transparent pressure tactic designed to manufacture a pretext for diluting or extinguishing Michelle's interest.

### E. The Attempted Freeze Out Merger And the Injunction Action

On June 20, 2025, Michelle received notice of a special shareholders' meeting set for July 2, 2025, to adopt a plan of merger of Simry Realty Merger Corp. into Simry Realty (the "**Freeze Out Merger**") and to appoint Aileen and Esther Haruvi (Arthur's wife) to the board. Under the Freeze Out Merger, Michelle's shares "will automatically be cancelled and will cease to exist." **Exhibit 20**, ¶3(b) The Freeze Out Merger was transparently designed to extinguish Michelle's shareholder standing in the Derivative Action, thereby preventing the rescission claims asserted in that action. Notably, the merger consideration offered to Michelle for her shares (**Exhibit 20**, ¶ 3(b)) was only $4,061,055 -- approximately $2 million *less* than the $6,122,253[4] amount that Hungerford himself had, just a few weeks earlier, represented (in a sworn affidavit submitted to cancel Michelle's notices of pendency) was the value of Michelle's

---

[4] 17.7% of $34,589,000. See **Exhibit 21**, ¶¶ 23-24.

interest. **Exhibit 21** ¶¶ 23-24; Diakos Decl. ¶ 38.

As a consequence of Defendants' attempt to eliminate Michelle as a shareholder and, potentially, her standing in the Derivative Action, on June 27, 2025, Michelle commenced an injunction action in State Court styled *Michelle Haruvi v. Peter Hungerford, Arthur Haruvi, Aileen Haruvi, Esther Haruvi, and Simry Realty Merger Corp, and Simry Realty Corp. as a nominal defendant,* Index No. 653903/2025 (the "**Injunction Action**") under BCL § 623(k). **Exhibit 22**; Diakos Decl. ¶ 40.

1.      **The July 1, 2025 TRO**. At oral argument, Justice Borrok found that the Freeze Out Merger "is evidence of a deliberate attempt by [Defendants] to freeze out Michelle Haruvi. It is evidence of the exact conduct that she complains about in the derivative action." **Exhibit 24**, Tr. 8:14-17. The Court held Michelle "demonstrated a *substantial likelihood* of success on the merits," that she would be "irreparably harmed," that "the balance of the equities clearly favor granting the preliminary injunction, the TRO for sure," and characterized the merger as "*a deliberate attempt to undermine her*" and "*sophomoric*." *Id*. 10:5-16. (emphasis supplied). The Court granted the TRO. **Exhibit 25**.

2.      **The July 21, 2025 Decision and Order.** Thereafter, Justice Borrok granted a preliminary injunction, enjoining the July 2, 2025 shareholders' meeting and all steps toward the Freeze Out Merger. In connection with Michelle's claim that the Board could not properly authorize the Freeze Out Merger because the Board had only one (1) director, Justice Borrok held that Michelle has a strong likelihood of success on the merits because, among other reasons, Simry Realty's Articles of Incorporation clearly provide for "not less than three directors," and "[t]he defendants do not dispute that Arthur Haruvi has been the sole director of Simry since May 2022." **Exhibit 26** (July 21, 2025 Decision + Order, pp. 1-2). The court also concluded that

**"the purpose of the merger on this record is to attempt to avoid the decision of the Appellate Division's decision upholding the validity of her claims . . . by depriving her of standing to pursue those claims. This is entirely improper**. (Alpert v. 28 Williams St. Corp., 63 N.Y.2d 557,562 [1984]…)" *Id*., p. 2. (emphasis supplied). Justice Borrok granted the preliminary injunction (the "**Preliminary Injunction Order**"). **Exhibit 26**.

### F.   The Appeal of the Preliminary Injunction Order

On July 22, 2025, the defendants in the Injunction Action appealed the Preliminary Injunction Order. But to seek delay for strategic reasons, they did not perfect their appeal for five months. Additionally, after the Foreclosure Actions were filed in November 2025, they filed a motion to expedite the appeal and vacate the injunction claiming a "drastic turn." On January 15, 2026, the First Department denied defendants motion.  Diakos Decl. ¶ 50; **Exhibit 29.**

Notably, oral argument on the appeal of the Preliminary Injunction Order was conducted in the Appellate Division on June 3, 2026. Diakos Decl. ¶ 51. During oral argument, the First Department viewed the Freeze Out Merger as an end-run around their Derivative Action Validation Order.[5] **Exhibit 30,** Tr. 9:23-10:12 (June 3, 2026 Transcript). To avoid yet another adverse ruling, Defendants caused this bankruptcy to be filed on June 14, 2026 (11 days later), before the Appellate Division had the opportunity to decide the appeal.

### G.  The Two Foreclosure Actions
### And The Intervention Order

On November 25, 2025, two foreclosure actions were commenced in State Court respecting the Simry Realty Properties: *FS CREIT Finance CB-1 LLC v. Abart Holdings, LLC, et al.*, Index No. 656112/2025 (concerning, among others, three of the Simry Realty Properties: 244

---

[5] The Court can view the June 3, 2026 oral argument by clicking the following link: June 03, 2026 Appellate Division, First Department Live Stream at the 2:00 hour mark.

West 74th Street, 54 West 75th Street, and 38 West 75th Street) and *FS Rialto 2021-FL3 Issuer, Ltd. v. 448-452 West 57 Associates, LLC, et al.*, Index No. 656113/2025 (the "**Foreclosure Actions**"), each of which is pending before Justice Borrok. Together, the two actions concern all seven of the Simry Realty Properties. Michelle is named as a defendant in both Foreclosure Actions because her Derivative Action claims affect title. Diakos Decl. ¶ 101-103, **Exhibits 53 and 54**.

Michelle, on behalf of Simry Realty, moved to intervene derivatively, arguing that a demand on Arthur, Simry Realty's sole director, who is personally conflicted as a guarantor of the very loans at issue, would be futile. Diakos Decl. ¶¶ 105-107, **Exhibit 59**. Defendants (but, notably, not the lenders) objected to Simry Realty's intervention in the Foreclosure Actions. Diakos Decl. ¶ 106. **Exhibit 60**.

At the hearing on Michelle's intervention motion, Justice Borrok recognized that Simry Realty has a substantial interest in intervening in the Foreclosure Actions because if the 2022 Transfer is voided in the Derivative Action, then the SPEs that purported to give the foreclosing lenders the mortgages on the Simry Realty Properties did not have the right to give those mortgages. **Exhibit 60**, at Tr. 4:18-5:4. And when Defendants' counsel advised the Court of Arthur's intention to select counsel for Simry Realty (in an obvious attempt to undermine Simry Realty's rights), Justice Borrok scoffed at such suggestion in disbelief: "**THE COURT**: Remind me, aren't the allegations in the other lawsuit [the Derivative Action] that Dad cut out daughter in every single way possible, such that his conduct was untoward. Isn't that exactly what Michelle Harvui is complaining of, such that he should not be trusted to represent her interests in this lawsuit? Isn't that what [Michelle's counsel] told me on any number of occasions that we have gotten together in the other lawsuit? Forgive me, am I forgetting things?" **Exhibit 60**, Tr.

- 12 -

10:25-11:8. Thereafter, Justice Borrok entered Orders dated June 9, 2026 authorizing Simry Realty to intervene in both Foreclosure Actions (the "**Intervention Orders**"). **Exhibits 68 and 69.**

### H. Avoidance of Aileen's Deposition and a Contempt Motion Against Hungerford

Pursuant to a Stipulation dated May 22, 2026, Aileen's deposition in the Derivative Action was scheduled to be held on Monday, June 15, 2026. Diakos Decl. ¶¶ 75-76; **Exhibit 48 and Exhibit 49**. Also, in the Injunction Action, Justice Borrok signed an Order to Show Cause on June 9, 2026 requiring Hungerford and Simry Realty Merger Corp. to show cause why, *inter alia*, (i) they should not be held in contempt for their failure to comply with a court order compelling discovery and an ESI Protocol and (ii) sanctions should not be awarded against them and their counsel "for frivolous conduct in this action". **Exhibit 47**.[6]

### I. The Bankruptcy Filing and Removal of the Derivative Action As the Latest Evasive Maneuver to Avoid Adverse Rulings

Faced with an unbroken string of adverse rulings -- the First Department's Division's Derivative Action Validation Order **(Exhibit 9)**, the TRO (**Exhibit 25**), the Preliminary Injunction Order (**Exhibit 27**), the First Department's denial of a motion to vacate the Preliminary Injunction Order (**Exhibit 29**), an order finding that Hungerford and PH Realty NY Holdings LLC (of which Hungerford is the sole member) flouted their discovery obligations in the Derivative Action (**Exhibit 33**), and the Intervention Orders (**Exhibits 68 and 69**) -- and confronting (i) two sanctions motions (one in each of the Injunction Action and the Derivative Action), (ii) an imminent deposition that would require Aileen to answer under oath for her self-

---

[6] Hungerford and Simry Realty Merger Corp failed to produce documents by May 6, 2026 (a date imposed by a State Court discovery order), **Exhibit 44,** and Simry Realty and Simry Realty Merger Corp. refused to produce documents from Shai Segev despite previously expressly agreeing to do so in an ESI Protocol. **Exhibit 43**, § B(b)(iv)(5); and Diakos Decl. ¶ 71.

interested conduct, and (iii) a likely affirmance by the First Department of Justice Borrok's Preliminary Injunction Order, Debtor's principals caused Simry Realty to file a Chapter 11 petition in this Court on June 14, 2026. Diakos Decl. ¶¶ 77-81.

Notably, the Goldberg Weprin firm filed the Debtor's Petition despite its clear unwaivable conflict. Goldberg Weprin is not a "disinterested person" under §101(14) of the Bankruptcy Code since, *inter alia*, it has (i) represented Hungerford in the Derivative Action and in the Injunction Action, whose interests are adverse to Simry Realty (as he is one of the persons that orchestrated the Transfer that stripped away Simry Realty's assets), (ii) vigorously opposed the recission of the Transfers, and (iii) filed papers adverse to Simry Realty in the Derivative Action. Diakos Decl. ¶ 108-112; and **Exhibits 61, 62, 63, and 64**.

The next day, Defendants caused the Derivative Action to be removed from State Court to this Court, halting the State Court proceedings and wresting the case away from Justice Borrok--the Justice who has been presiding over four related cases, who has issued adverse rulings against Defendants, and who characterized Defendants' scheme as "sophomoric."

According to the Debtor's Corporate Resolution purportedly authorizing this bankruptcy, Arthur is the "sole director" of Simry Realty. **Exhibit 50** at PDF p. 11 (attaching Corporate Resolution); see also Notice of Removal, **Exhibit 52** at PDF 2. However, the Articles of Incorporation make clear that the Board of Directors is required to consist of "not less than three nor more than five" directors. **Exhibit 23**.

In the Debtor's L.B.R. 1007-2 declaration, Aileen states that Simry Realty seeks to position the Debtor "to obtain a refinancing or restructuring" and to "cash out Michelle's minority interest" **Exhibit 50**, ¶¶ 8-9. However, because Defendants caused Simry Realty to transfer the Simry Realty Properties to the SPEs four (4) years ago, there is no business to

- 14 -

reorganize. Simry Realty has no business operations, no tenants, no revenue, no employees, no secured debt or any legitimate creditors, and is not in financial distress. Despite these undisputed facts, Aileen, as the Debtor's purported "Restructuring Officer", falsely stated in the Petition that the Debtor has assets between $50 million and $100 million, and liabilities between $50 million and $100 million. **Exhibit 50**, at PDF 8. The Debtor's sole asset is its diluted membership interests in Simry Holding (whose value, if any, is subsumed by the $180+ million in secured debt encumbering the underlying properties caused by the improper Transfer).

## ARGUMENT

## POINT I

## THE PETITION IS INVALID SINCE IT WAS FILED WITHOUT THE REQUIRED CORPORATE AUTHORITY

Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest …the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Subsection (b)(4) sets forth sixteen, non-exclusive examples of 'cause' for relief under § 1112(b), and "courts are free to consider other factors". *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. Sept. 25, 2018); *In re JJ Arch LLC.*, 663 B.R. 258, 280 (Bankr. S.D.N.Y. 2024), *mot for relief from judgment denied sub nom. In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), and *affd sub nom. In re JJ ARCH LLC, Debtor.*, 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026) (examples of "cause" enumerated by Section 1112(b) are illustrative). Indeed, "Bad faith depends upon 'the totality of the circumstances, and involves finding an intent to abuse the judicial process, and the purpose of the reorganization." *Id*. 663 B.R. at 281; *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309 (bad faith is determined on a case-by-case, totality-of-circumstances basis).

- 15 -

"It is settled that the lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for "cause" for relief under § 1112(b) of the Bankruptcy Code." *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *6; *In re Aamagin Prop. Group*, LLC, CV 23-383-JWD-RLB, 2024 WL 457801, at *7 (M.D.La. Feb. 6, 2024) (affirming dismissal of a bankruptcy petition filed by one member of an LLC where the operating agreement required unanimous consent). State law governs a debtor's authority to file a voluntary petition in bankruptcy. *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *6.

Here, Simry Realty is a New York corporation and its Articles of Incorporation require a minimum of three directors to serve on the Board of Directors. **Exhibit 23**.

However, as evidenced by, among other things, Simry Realty's Corporate Resolution attached to the Petition, Simry Realty has only one director, Arthur Haruvi. **Exhibit 50**, PDF at 11 (Arthur signed the Corporate Resolution as "Sole Director"). Because Simry Realty's Board of Directors was not properly constituted as holding three directors, any action it has purportedly taken, including the filing of the instant bankruptcy Petition, is *prima facie* invalid. *See, e.g. In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. Nov. 19, 2015) (applying New York law and dismissing chapter 11 case where member of debtor filed the bankruptcy petition without obtaining the consent of the other members in a supermajority vote, as required by the debtor's operating agreement); *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460 at *7 (as of the petition date and by virtue of the operating agreement, Ms. Smith lacked authority to act on behalf of the debtor); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 860-61 (Bankr. N.D. Ill. 2014) (dismissing chapter 11 case for cause pursuant to section 1112(b) where undisputed documents demonstrated "more probably than not that [filer of the

- 16 -

petition] was not authorized by its many members to file for bankruptcy," and the "putative debtor[]" did not carry its burden in rebutting that evidence.).

Indeed, the court in *In re JJ Arch* dismissed a bankruptcy filed by one of the debtor's two partners, on the grounds it was unauthorized since the consent of both partners was needed for major decisions. "If, under applicable law, the party purporting to act on behalf of the debtor lacked the authority to file, the bankruptcy must be dismissed. *In re Richardson Foods, Inc.*, 659 B.R. 154, 169 (Bankr. S.D.N.Y. 2024) (noting that 'if 'those who purport to act on behalf of the corporation have not been granted authority by local law to institute the [bankruptcy], [the court] *has no alternative* but to dismiss the petition'') (emphasis added) (citing *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945))." *In re JJ Arch, LLC*, 663 B.R. at 284. *See also*, *Stile v. Antico*, 272 A.D.2d 403, 404 (2d Dep't 2000) (holding that a quorum of two directors was necessary to transact the corporate business, and since defendant was not a director, "there was no quorum of directors" at the meeting, "and the actions taken thereat were invalid"); *Lewis v. Steinhart*, 40 A.D.2d 817 (1st Dep't 1972) ("[T]he attempt by the remaining two directors to effectuate  contract was void and invalid as violation of the corporation's charter and by-laws").

We emphasize that in the Injunction Action, Michelle sought to enjoin the scheduled July 2, 2025 special meeting of shareholders of Simry Realty at which Arthur sought to adopt the Freeze Out Merger. In this regard, Michelle argued, among other things, that any attempt by Simry Realty to effectuate the Freeze Out Merger was invalid as a matter of law because Simry Realty's board was not properly constituted since its Articles of Incorporation require at least three directors but purported to act when Simry Realty had only one director (*i.e.*, Arthur). In granting the Preliminary Injunction Order, Justice Borrok agreed and succinctly held:

- 17 -

Ms. Haruvi has demonstrated a substantial likelihood of success on the merits. Simry Realty Corp.'s [] Articles of Incorporation clearly provides for "not less that three directors." The defendants do not dispute that Arthur Haruvi has been the sole director of Simry since May 2022. It is simply no moment that the by-laws of Simry (which are not adduced in the record) may conflict with the certificate of incorporation (Business Corporation Law § 601[b]).

**Exhibit 27**, pp. 1-2.

This Court should similarly find that Arthur, as Simry Realty's undisputed "Sole Director," was not authorized to file the instant bankruptcy petition because the Board was not properly constituted. For this reason alone, the Court should dismiss this bankruptcy filing.

**POINT II**

**DEFENDANTS CAUSED SIMRY REALTY TO FILE
A VOLUNTARY PETITION IN BAD FAITH**

It is well settled that the filing of a bankruptcy petition in bad faith constitutes "cause" for dismissal. *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309.

In *C-TC 9th Avenue*, the Second Circuit identified the following non-exclusive factors as indicative of a bad-faith filing: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of a default on the debt; (4) the debtor's financial condition is, in essence, a two-party dispute which can be resolved in a pending state court foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor cannot meet current expenses, and (8) the debtor has no employees. 113 F.3d at 1311. The Second Circuit emphasized that these factors are "not a checklist" but that "the presence of several of them…suggests that the filing is not a good faith attempt to reorganize." *Id*.

- 18 -

"Similarly, because filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' [] courts have typically dismissed Chapter 11 petitions under these circumstances as well." *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (citation omitted); *In re 652 W. 160th LLC*, 330 B.R. 455, 467 (Bankr. S.D.N.Y. 2005) (debtor cannot use a bankruptcy filing solely as a tactic designed to gain a litigation advantage); *Furness v. Lilienfield,* 35 B.R. 1006, 1013 (D.Md. 1983) ("The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation."); *In re HBA East, Inc.,* 87 B.R. 248, 259–60 (Bankr. E.D.N.Y. 1988) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

Indeed, the facts present here are remarkably similar to those *In re JJ Arch,* in which the District Court, on June 5, 2026, affirmed the bankruptcy court's dismissal of the debtor's bankruptcy case as a bad faith filing. 2026 WL 1622865 at *5. The bankruptcy court found that the debtor's petition was not filed in order to rehabilitate or liquidate, but instead, as a litigation tactic to evade corporate governance issues raised by disputing business partners in a state court proceeding, including a state court order enjoining one member of the debtor from making "major decisions" without the consent of the other member. 663 B.R. at 264-265. Other courts in this Circuit have dismissed a bankruptcy case that was filed to seek a litigation advantage. S*ee, e.g. In re Murray*, 900 F.3d 53, 59 (2d Cir. 2018) (cause existed to dismiss involuntary petition for cause where bankruptcy involved two-party dispute and jurisdiction was invoked to obtain a special litigation advantage); *In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246, at *3 (noting

- 19 -

that "The bankruptcy court is not the proper venue for [business owners] to sort out their business affairs.");

As demonstrated below, Simry Realty's filing is littered with the "badges of bad faith" highlighted by the Second Circuit, which requires the dismissal of this case.

### A. Simry Realty Is a Single Asset Entity With No Going Concern to Reorganize

The Debor has no operating business. It is undisputed that Defendants denuded the assets of Simry Realty by transferring the Simry Realty Properties to the SPEs that are wholly owned by Simry Holding, leaving Simry Realty with only a materially diluted equity interest in Simry Holding, an entity whose value (if any) is dwarfed by the $180+ million in secured debt on the underlying properties that Simry Holdings (not Simry Realty) now owns.

The only way to restore Simry Realty's assets (*i.e.*, the Simry Realty Properties) lies in the Derivative Action -- not in a Chapter 11 reorganization. The First Department has already upheld the validity of Michelle's claims and found that if Michelle is successful in the Derivative Action, then the Transfer of the Simry Realty Properties is void -- not merely voidable -- and the Transfer would be rescinded. *Haruvi v. Hungerford,* 233 A.D.3d at 479-80.

Rather than seek that relief, Defendants have made clear that they do not intend to recover any of the Simry Realty Properties for Simry Realty's benefit. Their stated objective is instead to unilaterally "cash out" Michelle's minority interest through a Freeze Out Merger, extinguish her standing in the Derivative Action, and thereby preserve the benefits of their prior unlawful conduct for themselves. In short, this bankruptcy was filed to evade the First Department's ruling upholding Michelle's rescission claim and to undermine Justice Borrok's Preliminary Injunction Order barring Defendants from proceeding with the Freeze Out Merger.

### B. No Unsecured or Secured Creditors. The second *C-TC* factor is met. Simry Realty has

- 20 -

no known unsecured creditors.[7]  Indeed, as a result of the Transfer, it has no secured creditors either. Importantly, it is not an obligor of the $180 million in loans that Defendants caused the SPEs to borrow.

### C.  The Filing Is a Two-Party Dispute That Belongs in State Court

The fourth *C-TC* factor (two-party dispute) is squarely met. Here, the underlying dispute is not between the Debtor and a creditor. Rather, it is largely an internal business dispute among family members -- Michelle (a minority shareholder prosecuting derivative claims on the Debtor's behalf) and Defendants (the Debtor's controlling insiders who orchestrated the wrongful Transfer to enrich themselves at the expense of Michelle). The State Court (and the Appellate Division) has been adjudicating this dispute since February 2023, and Justice Borrok has developed substantial familiarity with the complex factual and legal issues involved, including questions of New York Business Corporation Law (§ 909), fiduciary duty, and real property title -- all matters of state law that state courts are uniquely positioned to resolve. The bankruptcy filing is a transparent attempt to remove this dispute from a forum where Defendants have consistently lost and place it before a court unfamiliar with the record in hopes of getting a better outcome.

Importantly, Simry Realty *is not in financial distress* in any sense that a Chapter 11 filing can address. The entity has no secured debt of its own. The $180+ million in loans are the obligations of the SPEs and their guarantors (including Arthur and Hungerford personally) -- *not of Simry Realty*. Diakos Decl. ¶¶ 12, 106; **Exhibits 53, 54, 66, and 67**. Simry Realty is not a party to those loan agreements. **Exhibit 50**, ¶ 13 ("Simry itself is not a borrower or guarantor").

---

[7] The Debtor was required to file its Schedules of Assets and Liabilities and Statement of Financial Affairs by June 29, 2026. As of the date of this filing, the Debtor has failed to file same.

Indeed, the Foreclosure Actions are directed at the SPEs -- not at Simry Realty. Diakos Decl. ¶ 30; see also **Exhibits 53 and 54**.

Even assuming, *arguendo,* that foreclosures could indirectly affect Simry Realty's residual 10% equity interest in Simry Holding, the remedy for that is the resolution of the Derivative Action (which seeks to void the Transfer and recover title to real properties and thereby void the mortgages improperly granted on the Simry Realty Properties); not a Chapter 11 plan. *See In re SGL Carbon*, 200 F.3d at 165-66 (absence of genuine financial distress weighs heavily against good faith).

### D. The Timing of Petition Evidences Intent to Avoid a Deposition, Halt Adverse Litigation, and Manipulate the Forum

The fifth *C-TC* factor -- "the timing of the filing evidences an intent to delay or frustrate the legitimate efforts" of parties to enforce their rights -- could not be more clearly satisfied in this case.

Indeed, the record overwhelmingly suggests that this bankruptcy was a means of removing the State Court Derivative Action from the purview of Justice Borrok. *See*, *In re JJ Arch*, 663 B.R. at 282 (finding subjective bad faith where record demonstrates that bankruptcy was a means of removing state court proceedings from the presiding state court justice); *In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246, at *3 (noting that "The bankruptcy court is not the proper venue for [business owners] to sort out their business affairs.").

The timing speaks for itself. The Petition was filed on the heels of Justice Borrok's June 9, 2026 orders granting Michelle's motion to intervene derivatively in the Foreclosure Actions (**Exhibits 68** and **69**) and Justice Borrok's rejection of Arthur's attempt to control the

Foreclosure Actions on behalf of Simry Realty as a plain conflict of interest.[8] *See also* **Exhibit 60**, Tr. 10:25-11:8.

It was also filed on Sunday June 14, 2026, one day prior to a court ordered deposition of Aileen. Additionally, it was filed just 11 days after the Appellate Division heard oral argument on Defendants' appeal of the Preliminary Injunction Order in order to avoid a further adverse ruling from the First Department. Likewise, it was filed just days after Judge Borrok signed an order scheduling a hearing to consider imposing sanctions on Hungerford, Simry Realty, Simry Merger Corp. and Goldberg Weprin for discovery violations. See Diakos Decl., ¶¶ 4, 75-80. And, of course, it was filed after every other attempt to silence Michelle's claims had failed, including eviction, malicious prosecution, and the Freeze Out Merger. Diakos Decl. ¶¶ 25-28.

The removal of the Derivative Action from State Court to this Court (filed the day after the Petition was filed) confirms the purpose. There was no legitimate bankruptcy reason to remove the Derivative Action; it is a derivative suit that seeks to return the Simry Realty Properties to the estate by voiding the Transfer. However, Defendants' goal is to *prevent* the rescission of the Transfer for the purpose of enriching themselves at the expense of Michelle.

Furthermore, the Petition was a bare bones filing. No Schedules of Assets and Liabilities, and Statement of Financial Affairs, or "first-day" motions were filed with the Petition. For all these reasons, it is clear that the bankruptcy filing and the removal of the Derivative Action were

---

[8] Arthur's conflict of interest could not be more pronounced. He is: (a) the sole director of the Debtor; (b) the person who presumably approved the Transfer that stripped the Debtor of all its assets; (c) the 100% owner of Jade Realty, which indirectly controls 85.5% of the SPEs that now hold title to the Simry Realty Properties; (d) a personal guarantor of the $180+ million in loans secured by those properties; (e) a defendant in the Derivative Action and the Injunction Action, and (f) enjoined by the Preliminary Injunction Order from attempting to undermine the Derivative Action Validation Order by advancing his scheme through the Freeze Out Merger. Indeed, Arthur's interests are diametrically opposed to those of Simry Realty and its minority shareholders. Diakos Decl. ¶¶108-112, **Exhibits 61-64**; See also, **Exhibit 60**, 10:8-22 (Justice Borrok recognizing Arthur's interest is "adverse to that of Simry Realty").

transparently designed to: (a) trigger the automatic stay and halt discovery (particularly Aileen's deposition and a hearing to hold certain defendants in contempt for discovery violations); (b) wrest the case away from Justice Borrok and the First Department, who have repeatedly ruled against Defendants; (c) evade the State Court's orders, and (d) create more delay and burden in order to force Michelle to capitulate. This is precisely the kind of forum shopping-manipulation that the bad-faith filing doctrine is designed to prevent.

## E.  The Debtor Has No Cash Flow

The sixth *C-TC* factor is met as Simry Realty has no cash flow. Before the 2022 Transfer, the Debtor owned Simry Realty Properties. Now, it owns only a minority equity interest in a holding company (Simry Holding) that owns SPEs which are now subject to foreclosure actions and therefore not receiving any distributions. Diakos Decl. ¶ 15.

## F.  The Debtor Cannot Meet Current Expenses

The seventh *C-TC* factor is met. Having been stripped of its principal assets (*i.e.*, the Simry Realty Properties) the Debtor no longer receives any rental income and, therefore, to the extent that the Debtor is incurring any debt (including administrative debt), it lacks the ability to pay for such expenses.

## G.  No Employees

The eighth *C-TC* factor is met since the Debtor has no employees. *See also In re D&G Constr. Dean Gonzalez. LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021) (finding a lack of employees was indicia of a bad faith filing).

## H.  This Bankruptcy Case Is Unauthorized and An End-Run of the Preliminary Injunction Order

The *JJ Arch* court dismissed the bankruptcy case as a bad faith filing, finding that there was objective futility where the petition was unauthorized. The court found that it was filed by

- 24 -

only one of two partners after Justice Cohen of the Commercial Division entered interim orders which required both partners' prior written consent to "major decisions" in order to maintain the *status quo* during a state court governance dispute. 663 B.R. at 284-285

Here, like in *JJ Arch,* there is objective futility as the filing was unauthorized and an end-run around the Preliminary Injunction Order. The Petition is clearly unauthorized as Justice Borrok of the Commercial Division entered the Preliminary Injunction Order, which found that Arthur, as the Debtor's sole director, lacked authority to act on his own since Simry Realty's Articles of Incorporation require at least three directors for Simry Realty to act. Further, the Petition is an act to avoid Justice Borrok's injunction enjoining Defendants from (i) holding a shareholders meeting and (ii) taking *any other steps* towards approving a Freeze Out Merger. Here, Defendants filed the case to "cash out" Michelle (the very act that Justice Borrok enjoined Defendants from doing) and to avoid the First Department's decision which validated Michelle's claims in the Derivative Action -- rescission of the Transfer. This case is the poster child of a bad faith filing.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: New York, New York
July 7, 2026

**KATSKY KORINS LLP**

By: /s/ Steven H. Newman
Steven H. Newman, Esq.
Robert A. Abrams, Esq.
605 Third Avenue
New York, New York 10022
Tel. (212) 953-6000
Email: snewman@katskykorins.com
rabrams@katskykorins.com

*Attorneys for Michelle Haruvi*

- 25 -