UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

SIMRY REALTY CORP.,

Debtor.

_____

MICHELLE HARUVI, suing individually and derivatively on behalf of Simry Realty Corp.,

Plaintiff,

-against-

PETER HUNGERFORD, PH REALTY NY HOLDINGS LLC, ARTHUR HARUVI, ABRAHAM HARUVI, AILEEN HARUVI, GARY PHILLIPS, SHAI SEGEV, 315W54 OWNER LLC, 311W54 OWNER LLC, 309W54 OWNER LLC,  313W54 OWNER LLC, 38W75 OWNER LLC, 54W75 OWNER LLC, FS CREIT FINANCE HOLDINGS LLC, and JOHN AND JANE DOES 1-10,
-and-
SIMRY REALTY CORP.,

Nominal Defendant.

_____

ABRAHAM HARUVI,

Third-Party Defendant,

-against-

JADE VENTURE PARTNERS LLC,

Third-Party Defendant.

_____

Case No. 26-11409 (PB)

Adv. Pro. No. 26-01059 (PB)

<u>DECLARATION OF JOANNA A. DIAKOS</u>

I, JOANNA A. DIAKOS, hereby declare:

1.    I am a member of the firm K&L Gates LLP and counsel for Michelle Haruvi ("**Michelle**"), a shareholder of Simry Realty Corp. ("**Simry Realty**" or the "**Debtor**").  I represent Michelle in two actions filed in the Commercial Division of the Supreme Court of the State of New York, New York County (the "**State Court**"): *Michelle Haruvi v. Peter Hungerford et al.*,

1

Index No. 651033/2023 (the "**Derivative Action**"), and *Michelle Haruvi v. Peter Hungerford et al.*, Index No. 653903/2025 (the "**Injunction Action**"). The Derivative Action has been extensively litigated for more than three years, and the Injunction Action has proceeded actively for more than a year.

2.     I am a member in good standing of the Bar of the State of New York and am admitted to practice before this Court. I am competent to testify to the following matters based upon my personal knowledge and my review of the pleadings, motion papers, court orders, hearing transcripts, discovery correspondence, and other documents filed in the state-court actions, the removed federal proceeding, and the Debtor's Chapter 11 case.

3.     I make this declaration in support of Michelle's motion to for an order: (i) pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), and 1452(b) and Federal Rule of Bankruptcy Procedure 9027(d), abstaining from hearing and remanding adversary proceeding; (ii) pursuant to 11 U.S.C. § 362(a), granting relief from the automatic stay; (iii) granting related relief. This declaration sets out the relevant factual record and attaches documents demonstrating that the filing was directed principally at halting or delaying Michelle's pending state-court claims, avoiding adverse state-court rulings, and shifting those disputes to this Court.

4.     As set forth below, Simry Realty filed for Chapter 11 after (i) in the Derivative Action, Michelle's derivative claims were reinstated by the Appellate Division, First Department (the "**First Department**") and, following remittitur, the State Court reinstated and subsequently extended the notices of pendency on the Simry Realty Properties, (ii) in the Injunction Action, the trial court enjoined Arthur Haruvi ("**Arthur**"), Aileen Haruvi ("**Aileen**")[1] and the other defendants

---

[1] Arthur is Michelle's father and Aileen is Michelle's sister.

from attempting a freeze-out merger of Michelle finding such attempt unauthorized and improper, and (iii) the State Court entered an Order to Show Cause why defendants Peter Hungerford ("**Hungerford**"), Simry Realty, and Simry Realty Merger Corp. (and their counsel at Goldberg Weprin) should not be held in civil contempt and sanctioned for discovery violations. Furthermore, the bankruptcy petition was filed on a Sunday, the day before Aileen's court-ordered deposition was scheduled to occur in the Derivative Action. The timing, stated purpose, and immediate use of the bankruptcy filing all point to the same conclusion: Simry Realty did not seek Chapter 11 to reorganize an operating business; rather, it was filed to stop Michelle's State Court litigation, derail court-ordered discovery, and attempt to effect a freeze out strategy to eliminate or neutralize Michelle's shareholder standing and derivative rights in order to end-run State Court orders.

**Background Concerning Simry Realty and the Derivative Action**[2]

5.    Michelle is a minority shareholder of Simry Realty.  **Exhibit 1,** FAC ¶¶ 1, 42.

6.    Before May 2022, Simry Realty owned 100% of all right, title, and interest in seven (7) mixed-use and/or residential real properties in Manhattan (referred to herein as the "**Simry Realty Properties**"). *Id.* ¶ 28.

7.    The Simry Realty Properties were part of a larger portfolio of approximately thirty properties, collectively referred to herein as the "**Haruvi Portfolio**." Except for the seven Simry Realty Properties, which were owned through Simry Realty by Michelle, Abraham Haruvi, Arthur Haruvi, and Aileen Haruvi, the other properties in the Haruvi Portfolio were held through other

---

[2] Where not otherwise indicated, the facts are drawn from the First Amended Complaint in the Derivative Action.  A true and correct copy of the First Amended Complaint (without exhibits) in *Michelle Haruvi v. Peter Hungerford et al.*, Index No. 651033/2023 (the "**FAC**"), NYSCEF Doc. No. 316, is annexed hereto as **Exhibit 1**.

entities that were owned equally by Arthur Haruvi and Abraham Haruvi until mid-May 2022. *Id.* ¶ 29.

8.     On or about May 13, 2022, Simry Realty transferred the Simry Realty Properties (the "**Transfer**") to seven special-purpose entities (the "**SPEs**" or the "**Real Property Defendants**"), each formed to hold title to a single property. Those entities are 244W74 Owner LLC, 38W75 Owner LLC, 54W75 Owner LLC, 309W54 Owner LLC, 311W54 Owner LLC, 313W54 Owner LLC, and 315W54 Owner LLC.  Each of those entities is named as a defendant in the Derivative Action. *Id.* ¶¶ 24, 30-31.

9.     Those seven SPEs are owned by Simry Holding LLC ("**Simry Holding**"), a newly formed holding company.  In purported exchange for transferring 100% ownership of the Simry Realty Properties to those entities, Simry Realty received only 10% of the common membership interests in Simry Holding and 100% of the preferred membership interests.  *Id.* ¶¶ 39, 58-59.  A true and correct copy of Simry Holding's operating agreement is annexed hereto as **Exhibit 2**.

10.     In connection with a buyout of Abraham Haruvi's ("**Abraham**") (Arthur's brother) 50% interest in Simry Realty, on or about May 13, 2022, Arthur and Abraham entered into an irrevocable proxy and voting agreement (the "**Voting Agreement**"), by which Abraham appointed Arthur as his "true and lawful proxy . . . to vote all of Abe's shares in Simry [Realty] and any and all other equity interests in Simry [Realty]" which Abraham owned or thereafter acquired, including the right to sign Abraham's name to any "consent, certificate, or other document relating to Simry [Realty]" and to "cause the Abe's Simry [Realty] Interests to be voted in accordance with the preceding sentence." The Voting Agreement made clear that it constituted a "voting agreement pursuant to which Abe agrees that in any circumstance where a vote or act with respect to Abe's Simry [Realty] Interests is allowed, that all such vote or action shall be performed by Arthur." The

Voting Agreement further provides that Abraham and Arthur Haruvi will "cooperate and use diligent efforts to amend the operative governing documents of Simry [Realty], as necessary, to memorialize this irrevocable proxy and voting agreement, and to recapitalize Simry [Realty] stock into voting and non-voting stock and permanently exchange Abe's Simry Interests for non-voting stock in Simry [Realty]." **Exhibit 1,** FAC ¶ 34.   A true and correct copy of the aforementioned Voting Agreement is annexed hereto as **Exhibit 3**.

11.    As a result of the Voting Agreement, beginning on or about May 13, 2022, Arthur has had effective control over Simry Realty because of his role as the sole director and President of the corporation, and also because of his ability to vote approximately 64.5% of Simry Realty's shares.  **Exhibit 1,** FAC ¶ 35.

12.    The Transfer of the Simry Realty Properties was part of a larger transaction by which Abraham's interests in the Haruvi Portfolio were bought out for approximately $80 million. The buyout was financed by loans totaling more than $180 million.  *Id.* ¶ 67.

13.    As Michelle has attested to in the Derivative Action and the Injunction Action, Michelle had no knowledge of, and did not learn of the Transfer of the Simry Realty Properties to the SPEs until August 2022 (almost three months after the Transfer occurred).  *See* **Exhibit 1,** FAC ¶¶ 3, 43, 46.  A true and correct copy of Michelle's affirmation in support of her motion for a preliminary injunction with temporary restraining order in the Injunction Action (without exhibits) is annexed hereto as **Exhibit 4.** *See*  **Exhibit 4** ¶ 9.

14.    Michelle learned of the Transfer during an August 2022 call with her sister Aileen and Gary Phillips (Aileen's long-time domestic partner). *See* **Exhibit 4** ¶¶ 9, 11.  About a week or so after she learned of the Transfer, Michelle's then-counsel received documents from Simry Realty's then-counsel relating to the purported restructuring.  *Id.* ¶ 12.  Michelle sought additional

information regarding the purported restructuring that had occurred and ultimately demanded that the Transfer be rescinded, but her demands for documents were largely ignored and she received no response to her pre-litigation demand that the Transfer be rescinded. *Id.* ¶ 14.

15. Since the Transfer of the Simry Realty Properties to the SPEs, Michelle has not received a single distribution or income from Simry Realty or any other entity within the Haruvi Portfolio, whereas in the years prior to the Transfer, Michelle typically received distributions and income in the aggregate amount of approximately $150,000 to $200,000. **Exhibit 1 ¶¶ 86-87.**

16. In February 2023, Michelle commenced the Derivative Action, asserting claims both individually and derivatively on behalf of Simry Realty. Among other things, Michelle sought rescission of the Transfer of all or substantially all of Simry Realty's assets to the SPEs based on the failure to provide notice to shareholders and an opportunity to vote as required by Business Corporation Law § 909, and based on inadequate consideration. A true and correct copy of her initial Verified Complaint with exhibits is annexed hereto as **Exhibit 5**.

17. The defendants in the Derivative Action moved to dismiss Michelle's complaint in its entirety and to cancel the notices of pendency that Michelle had filed on the Simry Realty Properties. Michelle cross-moved for summary judgment on certain of the claims based on Defendants' failure to provide the notice and shareholder vote required by BCL § 909.

18. The State Court granted defendants' motion to dismiss, dismissed claims founded on Business Corporation Law § 909, and cancelled the notices of pendency that Michelle had placed on the Simry Realty Properties. A true and correct copy of the State Court's dismissal order dated January 16, 2024 is annexed hereto as **Exhibit 6**.

19. Michelle promptly appealed the State Court's decision to the First Department. A true and correct copy of the notice of appeal dated February 7, 2024, is annexed hereto as **Exhibit**

**7.** Notably, during the oral argument on the appeal, the First Department inquired as to whether there was any evidence in the record that notice had been provided to Michelle of the Transfer of the Simry Realty Properties to the SPEs and asked "[i]f I'm right that there's no notice in the record that formally shows she was given notice of what was going to happen . . . does that mean that you're liable under 909?" Defendants counsel responded "If it was a sale of all or substantially all of the assets and that was beyond the ordinary course of the sale. Which –".  A true and correct copy of the transcript of the oral argument at the First Department is annexed hereto as **Exhibit 8**. *See* p. 11 thereto.

20.     By decision and order dated December 10, 2024, the First Department reversed the State Court's dismissal order.   A true and correct copy of the First Department's December 10, 2024 decision and order is annexed hereto as **Exhibit 9**.

21.     Significantly, the First Department held that:

    a. the requirements of Section 909 were triggered by the Transfer of the Simry Realty Properties to the SPEs because the transaction involved a disposition of all or substantially all of Simry Realty's assets and was not in the ordinary course of Simry Realty's business;

    b. Michelle was entitled to seek rescission of the Transfer under Section 909 of the BCL;

    c. Michelle had stated valid claims for breach of fiduciary duty and slander of title against Arthur and for aiding and abetting breach of fiduciary duty and slander of title against Peter Hungerford ("**Hungerford**"); and

    d. The notices of pendency on the Simry Realty Properties should not have been cancelled.

22.     After that decision by the First Department, the central factual issue on the rescission claim was whether Michelle received the statutory notice required by BCL§ 909. As discussed below, the documents and testimony obtained after remittitur confirm that defendants in the Derivative Action knew no such notice had been provided, notwithstanding their repeated contrary positions in the litigation.

23.     Following remittitur, the State Court reinstated the Derivative Action and reinstated the notices of pendency on the seven Simry Realty Properties. A true and correct copy of the State Court order dated February 20, 2025 reinstating the notices of pendency is annexed as **Exhibit 10**.

**Defendants' Related Litigation Conduct**

24.     Michelle's effort to obtain information, assert her shareholder rights, and challenge the Transfer was met not with transparent disclosure or corporate process, but with a series of escalating legal and corporate maneuvers directed at pressuring, burdening or eliminating her as a shareholder.

### a.     The First Eviction Action

25.     In September 2022, just after Michelle learned of the unlawful transfer of the Simry Realty Properties and Michelle voiced her objection thereto and demanded information regarding the Transfer, 244W74 Owner LLC (one of the SPEs and the owner of former Simry Realty Property located at 244 West 74th Street) filed a baseless eviction proceeding against Michelle in an attempt to kick Michelle and her family out of their longstanding home at that property that had been gifted to her by her father.  *See* **Exhibit 4** ¶ 20.

b.      **The Second Eviction Action**

26.      The first eviction proceeding was discontinued without prejudice by agreement of the parties,[3] but in March 2023, defendant 244W74 Owner LLC filed a second eviction proceeding against Michelle.  That proceeding was also dismissed in Michelle's favor following a directed verdict motion at trial before the completion of petitioner's prima facie case, by a Decision and Order dated January 22, 2025.  A true and correct copy of the court's decision is annexed hereto as **Exhibit 12.**  The Hon. Jack Stoller, J.H.C., found, among other things, that the testimony of Arthur and Hungerford was so gravely in conflict and contradictory that the case should be dismissed, and cautioned petitioner that: "[B]efore availing itself of the resources of the Court to seek a remedy, Petitioner's various constituents need to get their stories straight."  *See* **Exhibit 12, p. 8.**

c.      **The Malicious Prosecution Action**

27.      During the pendency of Michelle's appeal in the Derivative Action, Simry Realty, Hungerford, the SPEs, and certain related non-party entities commenced a malicious-prosecution action against Michelle under the caption *Simry Realty Corp. et al. v. Michelle Haruvi,* Index No. 654273/2024.  A true and correct copy of the malicious prosecution complaint is annexed hereto as **Exhibit 13.** In that action, the plaintiffs alleged that Michelle falsely claimed that the Simry Realty Properties had not been lawfully transferred and that she had not been given notice of the transaction.  *Id.* ¶ 3. The plaintiffs further alleged that Michelle's notices of pendency clouded title to the Simry Realty Properties, which they contended served as key collateral for loans, and sought damages of not less than $10 million. *Id.* ¶¶ 3, 54.

---

[3] See **Exhibit 11** attached hereto.

28.     In early April 2025, the court granted Michelle's motion to dismiss that malicious-prosecution action with prejudice. A true and correct copy of the April 9, 2025 order dismissing the malicious-prosecution action is annexed hereto as **Exhibit 14**.

### d.    Defendants Wrongfully Demanded Michelle Terminate Her Notices of Pendency

29.     On April 8, 2025, counsel for Simry Realty in the Derivative Action wrote to me to demand that Michelle withdraw the notices of pendency on the Simry Realty Properties, supposedly to enable a refinancing of the debt that was due to mature, absent extension, in May 2025. A true and correct copy of the April 8, 2025 letter is annexed hereto as **Exhibit 15.** Michelle declined to do so. The demand to withdraw the notices of pendency was particularly baseless since the First Department had ruled that they should not have been cancelled in the first instance and, based on that ruling, the State Court had recently reinstated them. *See* **Exhibit 10**.

### e.    The Wrongful Capital Call

30.     Approximately one week later, on April 15, 2025 Michelle received a capital-call notice from Simry Realty demanding that she make an $8,692,647 capital contribution by April 30, 2025, purportedly to pay off portions of more than $180 million in loans allegedly attributable to Simry Realty -- even though <u>it is undisputed that neither Michelle nor Simry Realty is a party to those loans</u>. A true and correct copy of the capital-call notice is annexed hereto as **Exhibit 16** (the "**Capital Call Notice**").

31.     Michelle responded to the Capital Call Notice on April 17, 2025, requesting information regarding the legal basis for the capital contribution demand. A true and correct copy of Michelle's letter response is annexed hereto as **Exhibit 17.**

32.     On April 23, 2025, Simry Realty's counsel responded that Simry Realty was attempting to raise sufficient capital to "stave off a maturity default" but <u>admitted that there was</u>

10

"no requirement" that Michelle comply with the demand.  With respect to the amount of capital demanded, Simry Realty claimed that the "Total Capital Requirement" was calculated in the motion to discharge the notices of pendency and that upon written confirmation that Michelle would pay her "fair share" of Simry Realty's purported capital needs, they would discuss what additional documents or information she needed to confirm the amount of capital needed.  A true and correct copy of the April 23, 2025 letter sent to Michelle is annexed hereto as **Exhibit 18.** Michelle refused to make a voluntary capital contribution.

**f.       Defendants' Refusal to Consent to Amendment of Michelle's Complaint**

33.       Concerned that Hungerford, Arthur, Aileen, and others would retaliate against her for her refusal to cancel the notices of pendency and make a capital contribution, Michelle sought leave to amend her complaint in the Derivative Action to, among other things, seek a declaration from the State Court that the April 15 Capital Call Notice is void *ab initio* and an injunction barring certain defendants (*i.e.,* Hungerford, PH Realty, Aileen Haruvi, Gary Phillips, Shai Segev and Nominal Defendant Simry Realty) from taking any further retaliatory action against her for her lawful and proper refusal to withdraw the notices of pendency and/or declining to make a capital contribution to Simry Realty.

34.       The defendants in the Derivative Action opposed Michelle's motion for leave to amend.

35.       However, on July 22, 2025, the State Court granted Michelle's motion for leave to amend.  A true and correct copy of the State Court's decision granting Michelle's motion for leave to amend is annexed hereto as **Exhibit 19**.  As relevant here, Michelle asserted in her First Amended Complaint (**Exhibit 1** hereto) claims against Aileen (and her domestic partner Gary Phillips and others) for aiding and abetting breach of fiduciary duty.

**Background Concerning the Injunction Action**

36.     On or about June 20, 2025, Michelle received a purported notice of a special meeting of shareholders of Simry Realty to be held on July 2, 2025 (the "**July 2 Meeting Notice**") with attachments. A true and correct copy of the July 2 Meeting Notice and related merger materials is annexed hereto as **Exhibit 20**. The July 2 Meeting Notice stated that a special meeting was being held to adopt certain resolutions, including to adopt a plan of merger under which Simry Realty Merger Corp. would be merged into Simry Realty and to appoint Aileen and Esther Haruvi ("**Esther**")[4] to Simry Realty's Board of Directors.

37.     The July 2 Meeting Notice further stated that, pursuant to the merger agreement, Michelle's common stock in Simry Realty would be converted into the right to receive $4,061,055, and that Michelle would no longer hold any common stock or any other interest in Simry Realty after the effective date of the merger (the "**Freeze-Out Merger**").

38.     Notably, the merger consideration offered in the July 2 Meeting Notice to Michelle was approximately $2 million *less* than the value that Hungerford, only one month earlier, had sworn was the value of Michelle's interest in Simry Realty. Specifically, in the Derivative Action, Hungerford submitted an affirmation, dated May 15, 2025, in support of a motion by Defendants Arthur Haruvi, 315W54 Owner LLC, 311W54 Owner LLC, 309W54 Owner LLC, 313W54 Owner LLC, 38W75 Owner LLC, 244W74 Owner LLC, 54W75 Owner LLC and Nominal Defendant Simry Realty Corp. to cancel the notices of pendency on the Simry Realty Properties in which he represented that Michelle's 17.7% share of Simry Realty's was worth $6,122,253. A true and correct copy of Mr. Hungerford's May 15, 2025 affirmation (without exhibits) is annexed hereto as **Exhibit 21**. *See* **Exhibit 21** ¶ 24.

---

[4] Esther Haruvi is Michelle's mother.

12

39. The merger agreement disclosed that Michelle's shares would be automatically cancelled and would cease to exist, and that Michelle would hold no shares of common stock or other interest in the surviving company. The notice and merger agreement did not identify a business purpose for the proposed Freeze Out Merger. **Exhibit 20.**

40. On June 27, 2025, Michelle commenced *Michelle Haruvi v. Peter Hungerford et al.*, Index No. 653903/2025 (the "**Injunction Action**"), pursuant to Business Corporation Law § 623(k), asserting breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims and seeking to enjoin Arthur, Aileen, Esther, and Hungerford from effectuating the proposed Freeze-Out Merger. A true and correct copy of Michelle's complaint in the Injunction Action (without exhibits) is annexed hereto as **Exhibit 22**.

41. Michelle alleged in the Injunction Action that Simry Realty's articles of incorporation require at least three (3) directors, but that since May 13, 2022 Simry Realty had only one (1) director -- Arthur. *See* **Exhibit 22 ¶¶** 39, 41-43. A true and correct copy of Simry Realty's articles of incorporation is annexed hereto as **Exhibit 23.**

42. Michelle further alleged that any purported board approval of the freeze-out merger was therefore ineffective and void *ab initio*. **Exhibit 22 ¶** 48.

43. Michelle also alleged that the proposed merger had no business purpose, was designed solely to force her out of Simry Realty, and offered consideration that did not reflect the fair value of her shares. **Exhibit 22 ¶¶** 49-60.

44. Michelle moved by order to show cause for a temporary restraining order and preliminary injunction. At oral argument on Michelle's request for temporary relief, Justice Borrok stated that the proposed freeze-out merger was "evidence of a deliberate attempt by [Defendants] to freeze out Michelle Haruvi" and "evidence of the exact conduct that she complains about in the

13

derivative action." A true and correct copy of the July 1, 2025, transcript of the temporary restraining order hearing is annexed hereto as **Exhibit 24**. *See* **Exhibit 24,** p. 8.

45.    The State Court entered an order to show cause enjoining defendants from holding the special meeting or effectuating the freeze-out merger pending the hearing and determination of Michelle's preliminary-injunction motion. A true and correct copy of the signed order to show cause is annexed hereto as **Exhibit 25**.

46.    Justice Borrok later heard oral argument on Michelle's preliminary-injunction motion on July 21, 2025. At that hearing, the court held that Michelle was likely to succeed on the merits of her claim that the freeze-out merger was unlawful and improper, granted Michelle's motion for a preliminary injunction, and ordered Michelle to post a $1,000 undertaking within thirty days. A true and correct copy of the preliminary-injunction hearing transcript is annexed hereto as **Exhibit 26**.

47.    On July 21, 2025, Justice Borrok issued a written order granting Michelle's preliminary-injunction motion. A true and correct copy of the July 21, 2025 preliminary injunction order is annexed hereto as **Exhibit 27** (the **"Preliminary Injunction Order"**). In that order, the court held that where the injunctive relief sought grants the movant substantially all of the relief sought, the court must apply a more stringent standard requiring a substantial likelihood of success on the merits. The court held that Michelle had demonstrated a *substantial likelihood* of success on the merits. *See* **Exhibit 27,** p. 1.

48.    In addition, Justice Borrok specifically found that Simry Realty's articles of incorporation "clearly provide for 'not less than three directors,'" that defendants did not dispute Arthur had been the sole director of Simry since May 2022, and that the purpose of the merger on the record before the court was to attempt to avoid the Appellate Division's decision upholding the

14

validity of Michelle's claims by depriving her of standing to pursue those claims. The court held that this was "entirely improper." *See* **Exhibit 27**, p. 2.

49.     The court also found that Michelle had established irreparable injury and that the balance of equities favored injunctive relief. The court enjoined defendants from holding the July 2, 2025 shareholders' meeting and from taking steps toward approving the Freeze-Out Merger pending the Injunction Action.  *Id.*

50.     Defendants appealed from the Preliminary Injunction Order on July 22, 2025.  A true and correct copy of the notice of appeal is annexed hereto as **Exhibit 28.**  For many months thereafter, defendants did not perfect their appeal, but in December 2025, defendants moved in the First Department for expedited relief to vacate the Preliminary Injunction Order. The First Department denied that motion. Defendants later perfected their appeal, and the First Department heard oral argument in early June 2026.  True and correct copies of the First Department order denying defendants' motion to vacate the preliminary injunction and the transcript of the June 3, 2026 oral argument on appeal are annexed hereto as **Exhibits 29 and 30**.

51.     During oral argument on the appeal, the First Department expressed extreme reservations over Defendants' conduct and said:

> THE COURT: No, the meeting was intended to freeze her out.
>
> MR. HEARLE: No, there was two –
>
> THE COURT: That's what was intended to do, that we're going to put these two people in so you can vote to freeze her out.
>
> MR. HEARLE: There were two agenda items. One was to reconstitute the board. The other was to vote on the merger.
>
> THE COURT: To freeze her out.
>
> MR. HEARLE: Justice Borrok –

> THE COURT: The whole point, Counsel, come on, the whole
> purpose of the meeting, we're going to do X so that we can do Y.
>
> MR. HEARLE: That may have been the result…

**Exhibit 30**, Tr. 9:23-10:12. Accordingly, Defendants' counsel conceded that their intent was to circumvent Michelle's rights as a shareholder and freeze her out.

**The State Court Extends Michelle's Notices of Pendency**

52.     In early January 2026, Michelle moved in the Derivative Action to extend the notices of pendency that were set to expire in February 2026.  A true and correct copy of Michelle's motion papers (without exhibits) is annexed hereto as **Exhibit 31**.

53.     Arthur, Aileen, the SPEs and Nominal Defendant Simry Realty in the Derivative Action opposed Michelle's motion, arguing that the filing of two foreclosure actions with respect to the loans encumbering the Haruvi Portfolio, and imposition of default interest and other financial penalties accruing at a purported rate of 22.85% daily necessitated denial of the motion. True and correct copies of Defendants' opposition papers (without exhibits) are annexed hereto as **Exhibit 32**.

54.     On March 2, 2026, the State Court rejected Defendants' arguments and entered an order granting, among other things, Michelle's motion to extend the notices of pendency. A true and correct copy of the Court's order is annexed as **Exhibit 33**.  In granting Michelle's motion, Justice Borrok specifically stated that Michelle "has never delayed in seeking to protect her rights and put the world on notice of her rights in this case."  *Id.*, p. 5. Important to Justice Borrok's decision was the fact that the First Department "has previously held that the cancellation of the Notices of Pendency was improper" and that she seeks rescission pursuant to BCL § 909 and quieting of title in relation to the Simry Realty Properties. *Id.*  Justice Borrok held that the "world

16

should be on notice of that" and squarely rejected defendants' argument that "changed circumstances" warrants permitting the notices of pendency to lapse.  *Id.*

55.     Defendants filed a notice of appeal of the State Court's order but it was returned for correction and never corrected.  A true and correct copy of the docket in the Derivative Action reflecting the correction notice at NYSCEF Doc. No. 510 is annexed as **Exhibit 34.**  Despite the passage of more than three months, to date, defendants have not taken any steps to perfect their appeal.

**Discovery Orders; Defendants' Wrongful Withholding of Documents; and Defendants' Delays**

56.     Discovery proceeded in the Derivative Action after remittal and amendment of Michelle's complaint.  Among other things, Hungerford and PH Realty NY Holdings LLC ("**PH Realty**"), an entity believed to be controlled by Hungerford, were required to produce documents and privilege logs.

### a.     Michelle's First Motion to Compel Production of Documents

57.      On December 31, 2025, Michelle moved by order to show cause in the Derivative Action to compel Hungerford and PH Realty (represented by Goldberg Weprin—the Debtor's purported counsel in this bankruptcy case) to produce documents improperly withheld as privileged and to provide a supplemental itemized privilege log.  Michelle also moved for sanctions.

58.     In response, Hungerford and PH Realty cross-moved for an order requiring Michelle to pay costs associated with any additional production if the court compelled them to produce additional documents.

        **b.**      **Justice Borrok Found That 10,000 Documents Were Wrongfully Withheld**

59.    On March 2, 2026, Justice Borrok granted the branch of Michelle's motion seeking to compel production from Hungerford and PH Realty. The court found that Hungerford had improperly withheld "over 10,000 documents based on broad assertions of attorney-client privilege" and that his categorical privilege log "did not provide sufficient information for Ms. Haruvi to challenge any improper assertion of privilege." A true  and correct copy of the State Court's order is annexed as **Exhibit 35** (emphasis added).

60.    The court also found that the later itemized privilege log revealed that Hungerford had withheld communications with third parties without proper explanation as to why the privilege would extend to such third parties, including communications between: (i) Hungerford and Shai Segev, (ii) Shai Segev and Aileen Haruvi, (iii) Hungerford and Abraham Haruvi, (iv) Hungerford and real estate brokers, (v) among PH Realty employees, (vi) Hungerford and Meyer Mintz and other business associates, and (vii) Hungerford and other third parties where no attorneys appeared to have been included in the communications.  **Exhibit 35,** p. 2.  The court also found that Hungerford had improperly withheld communications between his lawyers at Goldberg Weprin and Arthur Haruvi and Simry Realty's counsel at Cole Schotz relating to what Hungerford had claimed were "several negotiated  arms-length transactions with Simry Realty and Arthur Haruvi." *Id.*

61.    Justice Borrok held that Hungerford had offered "no legally cognizable basis" for withholding the documents in good faith based on privilege and had not met his burden to demonstrate that attorney-client privilege applied. *Id.* at 2-3.

62.    Justice Borrok further found that Hungerford and PH Realty failed to comply with the supplemental production previously ordered by Justice Borrok and that his prior order was a

"clear and unequivocal mandate requiring production." The court stated that, given his admonition, his order appeared to have been "willfully and contumaciously flouted in attempt to stymie discovery in this case." The court directed Hungerford and PH Realty to produce the documents no later than March 27, 2026, and further authorized Michelle to move for appropriate relief, including striking their pleadings, if they failed to comply. *Id.* at 3 (emphasis added).

### c. Michelle's Second Motion to Compel Production of Documents

63. Hungerford and PH Realty did not comply fully with the court's order in the Derivative Action by March 27, 2026. Instead, they produced only 461 documents by the deadline, while stating that they remained conscious of their ongoing obligations and would continue to review and produce as appropriate. A true and correct copy of Goldberg Weprin's transmittal email is annexed as **Exhibit 36.**

64. Over the next two weeks, Hungerford and PH Realty made additional productions, ultimately producing a total of 1,997 documents and withholding 1,658 documents on privilege grounds. Their amended itemized privilege log did not provide privilege descriptions and did not include the subject lines that had appeared on the prior itemized log.

65. On May 4, 2026, Michelle again moved in the Derivative Action to compel and for sanctions. She identified a discrepancy between the more than 10,000 documents previously included in Hungerford's privilege log and the 1,997 documents produced plus 1,658 documents withheld on the new log, leaving more than 6,000 documents unaccounted for. She also identified defendants' continued failure to produce documents Justice Borrok had ordered produced and documents responsive to her supplemental demands. True and correct copies of Michelle's second motion to compel papers in the Derivative Action (without exhibits) are annexed collectively as

**Exhibit 37**. Hungerford and PH Realty opposed Michelle's motion and oral argument was scheduled to be heard on June 11, 2026, and subsequently rescheduled to September 10, 2026.

66. The compelled productions made by Hungerford were significant because they confirmed what Michelle had alleged from the outset: Defendants knew before the Transfer that Michelle had not been given notice, that shareholder consent had not been obtained, and that the transaction was structured to deprive her of future appreciation in Simry Realty's assets. For example, one produced email reflects pre-transaction discussions about bringing Michelle "on board for the transaction" so that she would not be "confronted with a fait accompli," and stated that the issue was "especially sensitive when the deal is structured to take away her future appreciation in the Simry assets." Another produced communication reflects that defendants ultimately chose to "forego" obtaining Michelle's consent for the transaction and decided that there would "not be [a] meeting of the shareholders." True and correct copies of these communications are annexed hereto as **Exhibits 38** and **39,** respectively.[5]

67. Additional produced documents reflected concerns about the absence of corporate authority. In October 2022, counsel from Cole Schotz (who represented Simry Realty and Arthur Haruvi at the time) wrote to Hungerford's counsel that they "realize that Peter signed on behalf of Simry Realty Corp in multiple instances, but we do not have any consent/resolution or the like evidencing his authority to do so." A true and correct copy of the email is annexed hereto as **Exhibit 40.**

68. In April 2024, during negotiations concerning potential refinancing of the subject loans, the title insurer wrote that the lack of consent was a "crucial piece which was missing" to

---

[5] Hungerford initially marked these documents as "highly confidential," a designation that does not exist in the protective order entered by the State Court, but subsequently agreed on May 1, 2026 to remove the confidentiality designations from these documents (and others submitted herewith) at Michelle's request.

obtain approval for insurance. Hungerford and PH Realty's counsel at Goldberg Weprin responded that his "concern is that I am not aware whether there was a meeting of the shareholders called and I do not want to create an issue whereby the directors did something improper by not providing a minority shareholder a voice to express her displeasure with the proposed transfer to try and sway other shareholders." A true and correct copy of this communication is annexed hereto as **Exhibit 41.**

69. The absence of notice to Michelle is confirmed not only by documents that have been produced in the Derivative Action, but by Simry Realty's sole director's testimony. Arthur testified unequivocally at his deposition that he did not give Michelle notice of the transfer of the Simry Realty Properties to the SPEs before May 2022. A true and correct copy of relevant excerpts of Arthur Haruvi's deposition transcript is annexed hereto as **Exhibit 42,** Tr. 310:16–21 ("Q. Mr. Haruvi, you did not give notice to Michelle Haruvi of the transfer of the Simry Realty properties to the LLCs prior to May 2022; isn't that right? A. I did not."). Arthur also testified that he did not tell Michelle before the transfer that the properties would be transferred, *id.* 105:13–19; that no shareholder meeting was held to discuss the transfer, *id.* 105:20–24 ("Q. Was there ever a shareholder meeting where the transfer of the Simry Realty properties to the LLCs was discussed? A. No."); and that he had not seen any written shareholder consent to the transfer, *id.* 106:3–11 ("Q. Did Simry Realty ever seek written consent of the shareholders to the transfer of the Simry Realty properties? A. I'm not aware. Q. You haven't seen any written consent, have you? A. No.").

70. Arthur further testified that Simry Realty did not receive anything in return for the Transfer and that he did not perform, and was not aware of anyone performing on Simry Realty's behalf, any analysis of the value of the Simry Realty Properties or the consideration received by

Simry Realty in connection with the Transfer. **Exhibit 42,** Tr. 107:6-8 ("Q. Did it receive anything in return for that transfer? A. No."); Tr. 96:7-10 ("Q. Did you do any analysis as to what the value of the Simry Realty properties was before they were transferred to the LLCs. A. No."); Tr. 96:13-16 ("Q. Did Simry Realty do any analysis of what the value of the Simry Realty properties was prior to the transfer. A. I don't know."); Tr. 136:15-137:6 ("Q. Did you perform any analysis of the consideration provided to Simry Realty for the transfer of the properties. A. No.  Q. Are you aware of anyone else having done that on behalf of Simry Realty.  A. No. Q. Did anybody else do that, to your knowledge, on behalf of Simry Realty.  A. I do not know.")

> **d.** **Michelle's Motion to Compel Production of Documents and Impose Sanctions and Order of Contempt on Hungerford, Simry Realty, Simry Realty Merger Corp., and their counsel Goldberg Weprin**

71. Discovery disputes also arose in the Injunction Action. The parties negotiated and agreed to an ESI Protocol governing the collection, review, and production of electronically stored information. The protocol identified agreed custodians and additional ESI sources, including Shai Segev as an agreed custodian for Simry Realty and Simry Realty Merger Corp.  Justice Borrok so-ordered the protocol.  A true and correct copy of the so-ordered ESI Protocol in the Injunction Action is annexed hereto as **Exhibit 43**.

72. The preliminary conference order in the Injunction Action required document production to be completed by May 6, 2026. Hungerford, Simry Realty and Simry Merger Corp. (together the "**Simry Defendants**") -- all represented by Goldberg Weprin -- produced nothing by that deadline.[6] The court then extended the deadline to June 5, 2026.  True and correct copies of

---

[6] Notably, on May 1, 2026, the Simry Defendants filed an order to show cause seeking to stay the Injunction Action pending disposition of the Derivative Action, or, in the alternative to stay discovery in the Injunction Action pending the outcome of a dispositive motion. The Simry Defendants included a provision in their proposed order to show cause that would have stayed all deadlines in the Injunction Action pending a determination on the motion. *Haruvi v. Hungerford,* Index No. 653903/2025 (NYSCEF Doc. No. 54). The signed order to show cause set a return date of August 3, 2026, essentially mooting the interim relief requested therein, and struck the portion of the proposed order

the preliminary conference order and the order extending the production deadline are annexed hereto as **Exhibit 44 and 45**, respectively.

73.     Before the extended deadline, Michelle requested confirmation that the Hungerford and Simry Defendants would produce documents from the agreed custodians for the relevant period and before scheduled depositions. Rather than confirm compliance, the Simry Defendants asserted that they were not required to collect documents from Mr. Segev because he was not personally named as a defendant in the Injunction Action, even though they had expressly agreed in the so-ordered ESI Protocol that Mr. Segev is custodian for both Simry Realty and Simry Realty Merger Corp. They also refused to collect and produce documents dated after June 2025, even though events at issue in the Injunction Action post-dated June 2025 and Michelle's requests sought documents through the present.

74.     With the State Court's permission, in early June 2026, Michelle moved by order to show cause in the Injunction Action for immediate compliance, civil contempt against Hungerford, the Simry Defendants and their counsel at Goldberg Weprin, attorneys' fees and costs, sanctions, and conditional preclusion. A true and correct copy of Michelle's motion to compel in the Injunction Action is annexed hereto as **Exhibit 46** and a true and correct copy of Justice Borrok's order dated June 9, 2026 scheduling a hearing on July 28, 2026 to consider Michelle's motion is annexed hereto as **Exhibit 47**.

> **e.     State Court Orders Depositions To Go Forward Following Defendants' Delays**

75.     Defendants Aileen and Esther also repeatedly sought to use Hungerford's discovery violations to delay their own depositions in the Derivative Action. On May 5, 2026, the State Court

___

to show cause that would have stayed all deadlines in the case pending a ruling on the order to show cause. *See* NYSCEF Doc. No. 57.

ordered that defendants could not "put off those depositions" and that the depositions "must go forward between now and June 2, 2026." A true and correct copy of the May 5, 2026 order concerning the Aileen and Esther depositions is annexed hereto as **Exhibit 48**.

76.     Pursuant to the State Court's order, on May 8, 2026, the parties submitted a revised deposition schedule, under which Aileen was to be deposed on May 26, 2026 and Esther was to be deposed on June 1, 2026. Thereafter, counsel for Esther and Aileen advised that Esther had been scheduled for a medical procedure on May 26 and that Aileen purportedly needed to transport and assist Esther. A true and correct copy of counsel's communication is annexed hereto as **Exhibit 49.** Based on those representations, and counsel's agreement to sign on to a separate stipulation adding new noteholders as party defendants, Michelle agreed to postpone Aileen's deposition to June 15, 2026 and Esther's deposition to June 29, 2026.

**Petition Filed On Eve Of Aileen's Deposition and Before Return Date of Sanctions Motion**

77.     On the evening of Sunday, June 14, 2026—the eve of Aileen's rescheduled deposition—Goldberg Weprin emailed the parties a notice of Simry Realty's bankruptcy filing and the imposition of the automatic stay. A true and correct copy of Goldberg Weprin's June 14, 2026 email with attached voluntary bankruptcy petition, corporate resolution of Simry Realty, and declaration of Aileen Haruvi pursuant to local bankruptcy rule 1007-2 is annexed hereto as **Exhibit 50.**

78.     Counsel for Aileen at Holland & Knight (who also represents Simry Realty in the Derivative Action) then stated that, to "avoid violating the automatic stay," Aileen's deposition scheduled for June 15, 2026 would be postponed. A true and correct copy of Holland & Knight's June 14, 2026 email (without exhibits) is annexed hereto as **Exhibit 51**.

24

79.    Thus, the timing of the bankruptcy filing was clearly to stop a court-ordered deposition in the Derivative Action.

80.    As noted, the filing also occurred during active discovery disputes in the Injunction Action and the Derivative Action, including Michelle's pending motion to compel compliance with the so ordered ESI-Protocol and to obtain sanctions, contempt, fees, costs and conditional preclusion based on Defendants' alleged discovery violations.  Further, Goldberg Weprin—the law firm representing Simry Realty in the bankruptcy—faced the risk of a civil contempt order being entered against it as well.

81.    Notably, at the time Simry Realty's bankruptcy petition was filed, there were 554 entries on the docket in the Derivative Action.  *See* **Exhibit 34**.

**The Bankruptcy Filing and Removal of the Derivative Action**

82.    Simry Realty filed a voluntary Chapter 11 petition on June 14, 2026.[7]  *See* **Exhibit 50.**

83.    The Debtor's corporate resolution does not describe a need to reorganize an operating business owned directly by Simry Realty.  Instead, the resolution states that Michelle's state-court litigation and notices of pendency have "stymied" the ability to restructure or refinance the mortgages and authorizes Aileen to take actions "necessary or desirable" to "value and pay-out the minority interest of Michelle Haruvi" so that the mortgages can be refinanced or restructured "without undue interference." **Exhibit 50, Corporate Resolution at 1-2.**

84.    The Local Bankruptcy Rule 1007-2 declaration submitted by Aileen likewise states that the purpose of Chapter 11 is to "break the stranglehold" of Michelle's state-court litigation, to

---

[7] I note that the petition states that it was executed on June 12, 2026 by both Aileen and Goldberg Weprin. It appears that Goldberg Weprin purposely waited to file the petition until the afternoon on June 14, 2026 for tactical purposes given that Aileen's deposition was to be held on June 15.

obtain refinancing or restructuring "over the anticipated objections of Michelle," to remove Michelle's litigations to Bankruptcy Court, and to "end Michelle's reign of undue influence over Simry's corporate affairs."  **Exhibit 50, Aileen Decl. ¶¶ 8-9**.

**The Bankruptcy Filing Was Made to End Run the Multiple State Court Orders**

85.	The Debtor's statements confirm that the bankruptcy was filed to obtain litigation leverage against Michelle and to accomplish through Chapter 11 exactly what defendants had been enjoined from doing through the attempted Freeze-Out Merger.

86.	The bankruptcy papers contain several statements that are significant to the circumstances of the filing. First, although the corporate resolution describes the properties as the "Simry Properties," Aileen Local Rule 1007-2 declaration acknowledges that Simry Realty is only an indirect equity holder, along with Jade Venture Partners LLC, of Simry Holding LLC and the seven property-owning SPEs.  **Exhibit 50, Aileen Decl. ¶ 2.**

87.	Second, although the mortgage debt is identified as the justification for Chapter 11, the Local Rule 1007-2 declaration acknowledges that Simry Realty is neither a borrower nor a guarantor of the mortgage debt.  **Exhibit 50, Aileen Decl. ¶ 13.**

88.	Third, although Debtor asserts that the filing is necessary to address mortgage refinancing, the Debtor has no mortgages, and the corporate resolution authorizes actions to "value and pay-out" Michelle's minority interest and to proceed "without undue interference," and the Local Rule 1007-2 declaration states that the Debtor intends to remove Michelle's litigations to Bankruptcy Court. **Exhibit 50, Corporate Resolution, p. 2, Aileen Decl. ¶ 8.**

89.	These statements reveal that the filing is directed at Michelle and her state-court claims, rather than at reorganizing direct Debtor obligations.

90.     As of the filing date, the only debtor before the Court was Simry Realty—an entity that does not directly own the subject properties and is not a borrower or guarantor on the mortgage debt.

91.     On June 15, 2026, the day after Simry Realty filed its bankruptcy petition, defendants Arthur and Aileen, together with third-party defendant Jade Venture Partners LLC, filed a notice of removal in the United States District Court for the Southern District of New York, removing the Derivative Action pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.  A true and correct copy of the June 15, 2026 notice of removal filed in Case No. 26-cv-5038 is annexed hereto as **Exhibit 52**.

92.     In the notice of removal, the removing parties stated that Simry Realty filed a voluntary Chapter 11 petition on June 14, 2026 and that Simry Realty is a nominal defendant in the Derivative Action and the corporation on whose behalf Michelle asserts derivative claims.

93.     The notice of removal further stated that Arthur is Simry Realty's President, sole director, and 14.5373% shareholder; that Aileen Haruvi is a 17.73135% shareholder and Simry Realty's Restructuring Officer; and that Michelle is a 17.73135% shareholder of Simry Realty.

94.     The notice of removal asserted that the Derivative Action is "related to" the bankruptcy case because Michelle seeks rescission of the transfer of all or substantially all of Simry Realty's real property assets and quiet title to the subject real properties in favor of Simry Realty, and because Michelle asserts derivative claims on behalf of Simry Realty.

95.     This sequence confirms that the bankruptcy filing was used immediately as a litigation device to escape Justice Borrok, remove the Derivative Action from the state court that had been supervising the case, had reinstated discovery, had issued multiple discovery orders, and had already enjoined the attempted freeze-out merger.

96. Indeed, the stated purpose of the bankruptcy filing is to end run the State Court's injunction enjoining the Freeze-Out Merger. *See* **Exhibit 50** (Aileen Decl. at ¶ 8). In the Injunction Action, Defendants sought to cancel Michelle's common shares and leave her with no stock or other interest in Simry Realty. The State Court enjoined that effort, finding that Michelle had demonstrated a substantial likelihood of success and that the apparent purpose of the merger was to avoid the Appellate Division's ruling by depriving Michelle of standing to pursue her claims.

97. Less than a year later, the Debtor filed this bankruptcy case purportedly to have this court perform a "valuation" and direct a "cash out" of Michelle's minority interest **(Exhibit 50 ¶¶ 8-9)**, *which is exactly what Justice Borrok enjoined*.

98. The bankruptcy filing thus did not arise in a vacuum. It followed the State Court's express injunction of Arthur's, Aileen's and the other defendants' attempt to deprive Michelle of her shareholder status and derivative standing through a freeze-out merger, and it was filed while that injunction remained in place and after the First Department denied defendants' request for expedited relief from the injunction.

**Simry Realty Is Not a Borrower on the Loans In the Two Foreclosure Actions**

99. As noted, the May 2022 Transfer of the Simry Realty Properties was part of the larger transaction by which Abraham Haruvi's interests in the Haruvi Portfolio were bought out for approximately $80 million, financed by loans totaling more than $180 million.

100. Simry Realty is not a borrower on those loans.

101. In November 2025, when the lender under those loans filed two (2) foreclosure proceedings, *FS CREIT Finance Holdings LLC v. 244W74 Owner LLC et al.,* Index No. 656112/2025, and *FS CREIT Finance Holdings LLC v. 309W54 Owner LLC et al.,* Index No. 656113/2025, Simry Realty was not named as a defendant.

102.    Nor is Simry Holding a borrower.  As it relates to the Simry Realty Properties, the relevant borrowers are the seven special-purpose entities: 244W74 Owner LLC, 38W75 Owner LLC, 54W75 Owner LLC, 309W54 Owner LLC, 311W54 Owner LLC, 313W54 Owner LLC, and 315W54 Owner LLC.  True and correct copies of the foreclosure complaints (without exhibits) in Index Nos. 656112/2025 and 656113/2025 are annexed hereto as **Exhibit 53 and Exhibit 54**.

103.    Michelle is named as a defendant in the foreclosure proceedings, and on March 6, 2026, Michelle filed her Verified Answer to the foreclosure complaints.  True and correct copies of Michelle's answer in each foreclosure proceeding are annexed hereto as **Exhibit 55 and Exhibit 56.**

104.    Goldberg Weprin appeared in the foreclosure proceedings on behalf of Defendants Abart Holdings, LLC, Haruvi Holdings LLC, 244W74 Owner LLC, 1107 First Ave Owner LLC, 1109 First Ave Owner LLC, 232W74 Owner LLC, 236W74 Owner LLC, 38W75 Owner LLC, 54W75 Owner LLC, 448-452 West 57 Associates, LLC, Uvi Holdings LLC, 418-424W56 Owner LLC, 309W54OwnerLLC, 311W54OwnerLLC, 313W54OwnerLLC, 315W54OwnerLLC, Arthur Haruvi and Peter Hungerford.  True and correct copies of the answers filed by Goldberg Weprin on behalf of these defendants in each of the foreclosure proceedings are annexed as **Exhibit 57 and Exhibit 58.**

105.    After the foreclosure proceedings were commenced, Michelle moved to intervene derivatively on behalf of Simry Realty in each of the foreclosure proceedings so that Simry Realty's asserted title interest in the Simry Realty Properties could be protected in those proceedings.  A true and correct copy of Michelle's motion to intervene (without exhibits) is annexed hereto as **Exhibit 59.**

106.    At the June 9, 2026 hearing on Michelle's motion, the State Court recognized that Simry Realty would be the "party in interest" and "rightful title owner" if the transfers are voided, and that this was "the need for the derivative intervention." The foreclosing lenders did not oppose intervention, but Holland & Knight (who represent Arthur and Aileen in the Derivative Action and Injunction Action) appeared for Simry Realty, opposed Michelle's request to intervene on Simry Realty's behalf and argued that Simry Realty's board (i.e. Arthur) should select counsel for the corporation. Justice Borrok rejected that objection and granted Michelle's motion. In doing so, Justice Borrok recognized the conflict inherent in allowing Arthur to control Simry Realty's representation in the foreclosure proceedings, noting the allegations that he had "cut out" Michelle "in every single way possible," and accepted Michelle's argument that Arthur's personal guaranty obligations[8] created an additional conflict because removing the Simry Realty Properties from the lenders' collateral could increase his personal liability. A true and correct copy of the June 9, 2026 hearing transcript is annexed hereto as **Exhibit 60**. *See* **Exhibit 60**, p. 10.

107.    Justice Borrok's June 9, 2026 ruling is significant here because it reflects Justice Borrok's finding before the bankruptcy filing, that Simry Realty's interests could not be safely left to those whose personal interests and alleged misconduct are directly adverse to Michelle's derivative claims.[9]

**Goldberg Weprin Has Been Adverse to the Debtor in the Derivative Action and Injunction**

108.    Goldberg Weprin represents the Debtor, Simry Realty, in the bankruptcy case. However, Goldberg Weprin also represents Hungerford and PH Realty in the Derivative Action,

---

[8] As noted, Arthur Haruvi is a guarantor of the loans as is Peter Hungerford.  True and correct copies of the guaranty agreements are annexed hereto as **Exhibits 66 and 67**.

[9] True and correct copies of the orders granting Michelle's motion to intervene derivatively on behalf of Simry Realty in the foreclosure actions are annexed hereto as **Exhibit 68 and 69**.

and Hungerford, Simry Realty, and Simry Realty Merger Corp. in the Injunction Action.  A true and correct copy of one or more filings reflecting Goldberg Weprin's representation of Simry Realty in the instant bankruptcy proceeding, Peter Hungerford and PH Realty in the Derivative Action and Peter Hungerford, Simry Realty, and Simry Realty Merger Corp. in the Injunction Action are annexed as **Exhibits 61, 62 and 63**.

109.    Notably in Hungerford's Answer in the Derivative Action, Goldberg Weprin asserted that the Transfer should not be rescinded.   A true and correct copy of Hungerford's answer to the FAC is annexed hereto as **Exhibit 64.**  *See* **Exhibit 64** ¶ 134.

110.    Goldberg Weprin also represents Defendants Abart Holdings, LLC, Haruvi Holdings LLC, 244W74 Owner LLC, 1107 First Ave Owner LLC, 1109 First Ave Owner LLC, 232W74 Owner LLC, 236W74 Owner LLC, 38W75 Owner LLC, 54W75 Owner LLC, 448-452 West 57 Associates, LLC, Uvi Holdings LLC, 418-424W56 Owner LLC, 309W54OwnerLLC, 311W54OwnerLLC, 313W54OwnerLLC, 315W54OwnerLLC, Arthur Haruvi and Peter Hungerford in the foreclosure proceedings.  A true and correct copy of a pleading reflecting Goldberg Weprin's representation of Arthur, Hungerford and the aforementioned entities in the foreclosure proceedings is annexed as **Exhibit 65.**

111.    Goldberg Weprin's role is significant because the same firm representing the Debtor in this Chapter 11 case also represent parties whose wrongful conduct is at issue in the state court actions and whose discovery obligations were the subject of pending motion practice when this bankruptcy was filed.

112.    Further, as noted, Goldberg Weprin itself is the subject of the contempt motion that was filed in the Injunction Action, along with its clients in that case, Hungerford, Simry Realty Merger Corp, and Simry Realty. *See* **Exhibit 46**.

31

113.    For the reasons set forth above and in the accompanying memorandum of law, Michelle's motion should be granted in its entirety.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: July 7, 2026
        New York, New York

Joanna A. Diakos
Joanna A. Diakos