KATSKY KORINS LLP
605 Third Avenue
New York, New York 10022
(212) 953-6000
Steven H. Newman, Esq.
Robert A. Abrams, Esq.
snewman@katskykorins.com
rabrams@katskykorins.com
*Attorneys for Michelle Haruvi*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re <br><br> SIMRY REALTY CORP., <br><br>        Debtor. <br> _____ <br><br> MICHELLE HARUVI, suing individually and derivatively on behalf of Simry Realty Corp., <br><br>        Plaintiff, <br><br>    -against- <br><br> PETER HUNGERFORD, PH REALTY NY HOLDINGS LLC, ARTHUR HARUVI, ABRAHAM HARUVI, AILEEN HARUVI, GARY PHILLIPS, SHAI SEGEV, 315W54 OWNER LLC, 311W54 OWNER LLC, 309W54 OWNER LLC,  313W54 OWNER LLC, 38W75 OWNER LLC, 244W74 OWNER LLC, 54W75 OWNER LLC, FS CREIT FINANCE HOLDINGS LLC, and JOHN AND JANE DOES 1-10, <br>      -and- <br> SIMRY REALTY CORP., <br><br>        Nominal Defendant. <br> _____ <br><br> ABRAHAM HARUVI, <br><br>        Third-Party Plaintiff, <br><br>    -against- <br><br> JADE VENTURE PARTNERS LLC, <br><br>        Third-Party Defendant. <br> _____ | Case No. 26-11409 (PB) <br><br><br><br><br><br><br> Adv. Pro. No. 26-01059 (PB) |

**MEMORANDUM OF LAW BY MICHELLE HARUVI IN SUPPORT OF MOTION FOR AN ORDER: (I) PURSUANT TO 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), AND 1452(b) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027(D), ABSTAINING FROM HEARING AND REMANDING ADVERSARY PROCEEDING; (II) PURSUANT TO 11 U.S.C. §362(d)(1), GRANTING RELIEF FROM THE AUTOMATIC STAY <u>AND (III) GRANTING RELATED RELIEF</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 4

    A. Simry Realty and the Simry Realty Properties .................................................. 4

    B. The Unlawful Transfer of the Simry Realty Properties ....................................... 4

    C. The Appellate Division Validates Michelle's Claims........................................... 5

    D. Defendants' Retaliatory Campaign Against Michelle .......................................... 6

    E. The TRO and Preliminary Injunction Against the Freeze-Out Merger................................ 7

    F. The Intervention Orders and the Foreclosure Actions............................................. 7

    G. The Bad Faith Bankruptcy Filing and Removal of the Derivative Action ........................ 8

ARGUMENT........................................................................................ 10

POINT I: THE COURT SHOULD ABSTAIN FROM AND REMAND THE DERIVATIVE
ACTION TO STATE COURT......................................................................... 10

    A. Mandatory Abstention Requires Remand Under 28 U.S.C. § 1334(c)(2) ........................ 10

        1. Michelle Has Made a Timely Motion................................................... 11

        2. The Derivative Action Is Based Entirely on State-Law Claims ................................... 11

        3. The Derivative Action Is Non-Core: It Is, at Most, "Related To" the Bankruptcy
           but Does Not "Arise Under" or "Arise In" Title 11 .................................... 12

        4. There Is No Independent Basis of Federal Jurisdiction..................................... 12

        5. The Action Was Commenced in a State Forum of Appropriate Jurisdiction .............. 13

        6. The Action Can Be Timely Adjudicated in State Court ................................ 13

    B. Permissive Abstention Under 28 U.S.C. § 1334(c)(1)......................................... 13

    C. Equitable Remand Under 28 U.S.C. § 1452(b).............................................. 17

    D. Bad Faith Permeates the Jurisdictional Analysis ........................................... 18

POINT II: THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY ..... 19

    A. Legal Standard ........................................................................ 19

    B. The *Sonnax* Factors Overwhelmingly Favor Stay Relief................................... 20

        1. Complete Resolution of the Issues........................................... 20

        2. Lack of Connection With the Bankruptcy Case ............................... 20

        3. The Debtor as Fiduciary..................................................... 20

        4. Specialized Tribunal ........................................................ 21

5. The Action Primarily Involves Third Parties.................................................................. 21

6. No Prejudice to Creditors.............................................................................................. 21

7. Judicial Economy and Readiness for Trial ................................................................... 21

8. Balance of Harms.......................................................................................................... 22

C. The Bad Faith Filing of The Case Independently Constitutes "Cause" for Stay Relief .... 22

D. The Transfer is Void, Not Voidable—The Stay Cannot Protect a Nullity ........................ 23

E. The Debtor, Through Defendants, Is Litigating Against the Estate's Interest ................... 23

CONCLUSION ............................................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*BGC Partners, Inc. v Avison Young (Can.), Inc.*, 919 F.Supp2d 310 (S.D.N.Y. 2013) ......... 11, 15

*Core Litig. Trust v. Apollo Global Mgmt., LLC (In re AOG Entertainment, Inc.)*,
569 B.R. 563 (Bankr. S.D.N.Y. 2017) ........................................................................ 10, 11, 12

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) ............................................................ 12

*Haruvi v. Hungerford*, 233 A.D.3d 478 (1st Dept. 2024) ........................................... 2, 5, 6, 23

*In re 652 W. 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005) ................................................. 22

*In re 950 Meat & Grocery Corp.*, 617 B.R. 224 (Bankr. S.D.N.Y. 2020) ................................. 19

*In re Cody, Inc.*, 281 B.R. 182 (S.D.N.Y. 2002) ........................................................................ 14

*In re Cody, Inc.*, 338 F.3d 89 (2d Cir. 2003) ...................................................................... 12, 14

*In re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997) ...................................................... 18, 22

*In re Ebury St. Capital, LLC*, 664 B.R. 639 (Bankr S.D.N.Y. 2024) ........................................ 12

*In re Fasciglione,* 665 B.R. 594 (Bankr. S.D.N.Y. 2024) ............................................................ 14

*In re Kingston Square Assocs.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997) ...................................... 18

*In re Riverside Nursing Home*, 144 B.R. 951 (S.D.N.Y. 1992) ................................................. 17

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ............................................................... 22

*In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990) ............................................ 19, 20, 21

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005) ................................... 10, 11

*Stern v. Marshall*, 564 U.S. 462 (2011) ................................................................................ 12, 16

**Statutes**

11 U.S.C. § 1112 ........................................................................................................................ 10, 23

11 U.S.C. § 362 ...................................................................................................................... 1, 19, 20

28 U.S.C. § 1334 ..................................................................................... 1, 3, 10, 11, 13, 15

28 U.S.C. § 1452 ...................................................................................................................... 1, 17

28 U.S.C. § 157 ................................................................................................................... 3, 12, 16

Business Corporation Law § 701 ........................................................................... 8

Business Corporation Law § 909 ............................................. 1, 4, 5, 6, 11, 14, 20, 23

Fed. R. Bankr. P. 9027 ....................................................................................... 1, 13

RPAPL Article 15 ............................................................................................. 11, 14

**Rules**

Bankruptcy Rule 9027 ......................................................................................... 9, 16

Michelle Haruvi ("**Michelle**"), by her undersigned counsel, respectfully submits this Memorandum of Law in support of her motion for an order: (i) pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), and 1452(b), and Fed. R. Bankr. P. 9027(d), abstaining from hearing the derivative action styled *Michelle Haruvi v. Peter Hungerford*, *et al.*, pending in the Supreme Court of New York, New York County (the "**State Court**"), Index No. 651033/2023 (the "**Derivative Action**") and remanding the Derivative Action to State Court; and (ii) pursuant to 11 U.S.C. § 362(d)(1), granting relief from the automatic stay, for cause, to permit continued prosecution of the Derivative Action and the related Injunction Action (defined below) ("**Motion**").

## PRELIMINARY STATEMENT[1]

This Motion arises from yet another blatant act by Peter Hungerford ("**Hungerford**"), Aileen Haruvi ("**Aileen**"), Arthur Haruvi[2] ("**Arthur**"; together with Hungerford and Aileen, collectively, the "**Defendants**") to undermine State Court orders duly entered in the Derivative Action and the Injunction Action. Michelle commenced the Derivative Action, as a minority shareholder in her individual capacity and on behalf of Simry Realty Corp. ("**Simry Realty**" or the "**Debtor**"), seeking, *inter alia*, to recover title to seven (7) mixed-use Manhattan real properties (the "**Simry Realty Properties**") that Defendants unlawfully caused Simry Realty to transfer to seven newly formed special-purpose entities (the "**SPEs**"), each wholly owned by Simry Holding LLC ("**Simry Holding**"), in violation of New York Business Corporation Law ("**BCL**") § 909, and to recover damages for their breaches of fiduciary duties. Indeed, the New York Appellate Division, First Department ("**First Department**"), has already held that Michelle has valid claims for relief and, if successful, the transfers from Simry Realty to the SPEs are ***void***, not merely

---

[1] Capitalized terms which are not otherwise defined herein have the meaning given to them in the accompanying Declaration of Joanna A. Diakos Kordalis ("**Diakos Declaration**"). References to Exhibits herein refer to the Exhibits attached to the Diakos Declaration.

[2] Arthur is Michelle's father and Aileen is Michelle's sister.

voidable. *Haruvi v. Hungerford*, 233 A.D.3d 478, 479 (1st Dep't 2024).

In an effort to sidestep the First Department's holding, Defendants then engaged in a scheme to deprive Michelle of her standing as a shareholder in the Derivative Action by attempting to "cash out" her equity interest in Simry Realty pursuant to a Freeze-Out Merger. However, Justice Andrew Borrok, the New York State Court Justice presiding over both the Derivative Action and the Injunction Action, saw through Defendants' gamesmanship and entered a preliminary injunction (in the separate Injunction Action) enjoining Defendants and others from taking any action to attempt the Freeze-Out Merger. Defendants in the Injunction Action appealed the Preliminary Injunction Order to the First Department which heard oral argument on June 3, 2026. However, likely recognizing that the Court was not impressed with the merits of their appeal, Simry Realty filed the instant bankruptcy proceeding prior to the First Department having the opportunity to render its decision.

The Debtor's bankruptcy filing and its contemporaneous removal of the Derivative Action are **<u>not</u>** acts of a company in financial distress that seeks to reorganize. They are blatant bad faith litigation tactics and part of a years-long campaign by Defendants and others to wrongfully denude Simry Realty's assets, strip Michelle of her shareholder status, and to evade the consequences of multiple adverse judicial rulings. To be clear, Defendants did not cause the instant bankruptcy case to *recover* the assets that they wrongfully transferred -- the Debtor admits as much in its Petition. Indeed, as evidenced by the Debtor's Local Bankruptcy Rule 1007-2 declaration, it is apparent that the purpose of this bad faith bankruptcy filing is to *prevent* these transfers from being rescinded. As the Debtor itself concedes, the purpose of the filing is to "cash out" Michelle and have this Court determine the value of her interests (**Exhibit 50** (ECF No. 2) (L.B.R. 1007-2 Decl. at ¶ 9.)) -- actions that the State Court expressly enjoined in the Preliminary Injunction Order. Thus, it is abundantly clear that the Debtor's removal of the

Derivative Action is nothing more than an attempt to end-run State Court orders and have the case heard in what it believes to be a more favorable forum.

The Derivative Action meets all of the criteria for *mandatory* abstention pursuant to 28 U.S.C. § 1334(c)(2). It is a purely state-law dispute. It involves no federal question. None of the claims in the Derivative Action are based on the Bankruptcy Code, any ruling by this Court, any claim filed in this Court, or any plan of reorganization proposed to or approved by this Court. Rather, it asserts claims under the BCL, common-law fiduciary duty principles, declaratory judgment, and New York real property law. It has been vigorously litigated for over three and one-half (3½) years before Justice Borrok in the Commercial Division, who is also presiding over three (3) other related proceedings, and has issued numerous orders, including a temporary restraining order, a preliminary injunction, discovery orders, and two intervention orders -- all arising from the wrongful and systematic efforts by Defendants to divest Michelle of her ownership.

No legitimate purpose is served by retaining this Derivative Action in this Court. The Derivative Action is non-core under 28 U.S.C. § 157, implicates no substantive right created by the Bankruptcy Code, primarily involves non-debtor parties, and, critically, a ruling in Michelle's favor would *benefit* the Debtor's estate by restoring title to the Simry Realty Properties to Simry Realty's ownership. However, the Debtor, controlled by Defendants, is litigating *against* the estate's interest.

Moreover, Arthur and Hungerford have a powerful incentive to oppose rescission: they personally guaranteed approximately $180 million in loans secured by the Simry Realty Properties after orchestrating the Transfer (defined below), since voiding the Transfer of the Simry Realty Properties would materially increase their exposure under those loan guaranties.[3] Arthur and Hungerford have done, and will continue to do, everything in their power to prevent rescission of

---

[3] Copies of the Guaranties are attached as **Exhibits 66 and 67** to the Diakos Affirmation.

the Transfer. Arthur's and Hungerford's conflict of interest is plain and underscores the bad faith

filing of this bankruptcy case and the removal of the Derivative Action.

Mandatory abstention, permissive abstention, equitable remand, and cause for relief from

the automatic stay all require that this action be returned to State Court without delay.

## FACTUAL BACKGROUND

### A. Simry Realty and the Simry Realty Properties

For decades, Simry Realty was a profitable New York corporation that wholly owned,

operated, and managed the Simry Realty Properties located at: 244 West 74th Street, 54 West 75th

Street, 38 West 75th Street, 311 West 54th Street, 309 West 54th Street, 313 West 54th Street, and

315 West 54th Street (the "**Simry Real Properties**"). **Exhibit 1** (Verified First Am. Compl.

("**FAC**") ¶¶ 2, 28). Michelle is a shareholder of Simry Realty, holding approximately 17.73% of

the outstanding shares. (*Id*., FAC ¶¶ 1, 63.). The Simry Realty Properties were part of a larger

approximately 30-property "Haruvi Portfolio." The remaining 23 properties were held through

entities owned 50/50 by Arthur and his brother, Abraham Haruvi, until mid-May 2022. (*Id*., FAC

¶ 29)

### B. The Unlawful Transfer of the Simry Realty Properties

On May 13, 2022, without any shareholder notice or vote as required by BCL § 909, Simry

Realty purported to transfer title to all Simry Realty Properties to different SPEs, wholly owned

by Arthur's affiliated entity, Simry Holding (such transfers are collectively referred to herein as

the "**Transfer**"). (*Id*., FAC ¶¶ 36-39). The Transfer was structured to divest Michelle of her

economic interest through a labyrinth of interposed entities: Jade Venture Partners LLC ("**Jade

Venture**") owns 90% of the common membership interests of Simry Holding; Simry Realty

retains only 10% of the common membership interests of Simry Holding. Jade Venture, in turn, is

owned 95% by Jade Realty Partners LLC ("**Jade Realty**")—wholly owned by Arthur—and 5%

- 4 -

by PH Realty NY Holdings LLC ("**PH Realty**"), which is wholly owned by Hungerford. (*Id.*, FAC ¶¶ 56, 59-63.)

The consequence of this scheme is devastating. Before the Transfer, the Debtor owned and operated 100% of the Simry Realty Properties. After the Transfer, the Debtor owned only a 10% interest in Simry Holding and 100% of the preferred membership interest. Michelle, who owns approximately 17.73% of the Debtor, was left with an approximate 1.7% indirect economic interest in the Simry Realty Properties that had been the Debtor's sole assets. (*Id.*, FAC ¶ 63.). Michelle did not learn of the Transfer until approximately August 2022, three months after it occurred. (*Id.*, FAC ¶¶ 3, 46, 47, 48).

Even worse, after denuding Simry Realty of substantially all of its assets, Simry Holding and the SPEs then removed and diverted their substantial equity in the Simry Realty Properties by obtaining $183 million in mortgage loans. The Transfer was part of a series of transactions in which the entire Haruvi Portfolio (including the Simry Realty Properties) was quickly encumbered to fund, in part, an approximately $80 million buy-out of Abraham Haruvi's (Arthur's brother) 50% interest in the Haruvi Portfolio. (*Id.*, FAC ¶¶ 32, 67-70.) Critically, the Debtor admitted in its Local Bankruptcy Rule 1007-2 declaration that the Debtor is not an obligor under such loans. **Exhibit 50**, ¶ 13 ("Simry itself is not a borrower or guarantor"). Those are obligations of the other entities that make up the Haruvi Portfolio, including the SPEs, and Arthur and Hungerford personally, as guarantors. (Diakos Decl. ¶¶ 90, 108, n. 8, **Exhibits 66 and 67**).

C. **The Appellate Division Validates Michelle's Claims**

In December 2024, the Appellate Division, First Department, reversed the trial court's dismissal of the Derivative Action and reinstated her complaint in its entirety. Diakos Decl. ¶ 20-21; **Exhibit 9**. *Haruvi v Hungerford*, 233 A.D.3d 478 (1st Dept 2024). The First Department held that the Transfer "was a sale or disposition subject to Business Corporation Law § 909(a)" because

Simry Realty's sole business had been owning and operating the residential properties, and the Transfer was therefore "not in the ordinary course of its actual business." *Id.* The First Department further found issues of fact as to whether Michelle received the notice required by BCL § 909. *Id.*

Most significantly, the First Department held that if the Transfer was done without the notice required under BCL § 909(a), the transfers of title of the Simry Realty Properties to the SPEs are "***not voidable but void***." *Id.* at 479. This means that the Transfer can be rescinded regardless of the passage of time, regardless of what occurred in the interim, and regardless of the purported encumbrances placed on the Simry Real Properties. Michelle "may still seek rescission" on Simry Realty's behalf. *Id.* The Appellate Division also held that the notices of pendency she filed on the Simry Realty Properties should not have been cancelled. *Id.*

## D. Defendants' Retaliatory Campaign Against Michelle

Rather than accept the Appellate Division's ruling, Defendants engaged in a pattern of harassment and retaliation, each successive maneuver designed to deprive Michelle of her shareholder rights and derivative standing:

> *First:* Two baseless eviction proceedings (September 2022 and January 2023) were filed against Michelle—both were dismissed. Diakos Decl. ¶¶ 25-28; and **Exhibit 4, ¶20, and Exhibits 11 and 12.**

> *Second:* A malicious prosecution action seeking $10 million (filed 2024)—dismissed with prejudice on April 9, 2025. Diakos Decl. ¶ 27-28 and **Exhibits 13 and 14.**

> *Third:* A frivolous $8,692,647 capital call (April 15, 2025), demanding Michelle contribute toward loans to which neither she nor Simry Realty is a party. Diakos Decl. at ¶¶ 30-32 and **Exhibit 16**

> *Fourth:* An attempted Freeze-Out Merger (June-July 2025)—an attempt to cash out Michelle by forcing Michelle to surrender her stock at a below-market price and thereby strip her of standing to pursue the derivative claims the First Department had just validated. Diakos Decl. ¶¶ 36-39 and **Exhibit 21 ¶¶ 23-24**

> *Fifth:* The Chapter 11 filing and removal of the Derivative Action—the latest and most audacious maneuvers in this escalating pattern—to attempt the Freeze-Out

- 6 -

Merger that the State Court expressly enjoined in the Injunction Action (as detailed below). **Exhibit 50**, LBR 1007-1 Declaration, ¶¶ 8-9 at PDF 14-15.

### E. The TRO and Preliminary Injunction Against the Freeze-Out Merger

In a separate proceeding brought by Michelle in State Court styled *Michelle Haruvi, et al. v. Hungerford*, Index No. 653903/2025 (the "**Injunction Action**"), Justice Borrok issued a temporary restraining order blocking the Freeze-Out Merger (the "**TRO**"). **Exhibit 25**. In granting the TRO, the court found the proposed merger "is evidence of a deliberate attempt by [Defendants] to freeze out Michelle Haruvi. It is evidence of the exact conduct that she complains about in the derivative action." (**Exhibit 24**, July 1, 2025 TRO Tr. 8:14-17.) Justice Borrok found Michelle had "demonstrated a *substantial likelihood* of success on the merits" and characterized the merger as "*a deliberate attempt to undermine her*" and "*sophomoric*." (**Exhibit 24**, TRO Tr. 10:5-16.) (emphasis supplied).

On July 21, 2025, Justice Borrok converted the TRO into a preliminary injunction. **Exhibit 27**. Justice Borrok held that Michelle demonstrated "a substantial likelihood of success on the merits," since (i) it was unauthorized because the Articles of Incorporation "clearly provide for 'not less than three directors'" while "Arthur Haruvi has been the sole director of Simry since May 2022," (id at 1-2) and (ii) cashing Michelle out was an improper attempt to end-run the First Department—that "the *purpose of the merger on this record is to attempt to avoid the decision of the Appellate Division's decision upholding the validity of her claims* by depriving her of standing to pursue those claims. This is entirely improper." (emphasis supplied). **(Exhibit 27,** July 21, 2025 Decision and Order at p. 2).

### F. The Intervention Orders and the Foreclosure Actions

Two foreclosure actions—both before Justice Borrok—concern the Simry Realty Properties: *FS CREIT Finance CB-1 LLC v. Abart Holdings, LLC*, Index No. 656112/2025 (involving 244 West 74th, 54 West 75th, and 38 West 75th) and *FS Rialto 2021-FL3 Issuer, Ltd.*

*v. 448-452 West 57 Associates, LLC*, Index No. 656113/2025 (involving 309, 311, 313, and 315 West 54th) (collectively, the "**Foreclosure Actions**"). Michelle is a named defendant in both on account of the notices of pendency she filed on the Simry Real Properties. **Exhibits 53 and 54**.

On June 9, 2026, Justice Borrok granted Michelle's motions to intervene derivatively on behalf of Simry Realty in the Foreclosure Actions. The court recognized that restoring Simry Realty's title to the Simry Realty Properties means that the foreclosing lender's mortgages would be void. Counsel for Michelle explained: "if those transfers are void, then the special purpose entities that purported to give the plaintiffs mortgages on the properties did not have the right to give those mortgages." Justice Borrok responded: "So you have a substantial interest which is at risk by virtue of the foreclosure action." **Exhibit 60** (June 9, 2026 Intervention Tr. 4:18-5:4.)

The court further recognized Arthur's adverse interest to Simry Realty, stating in response to Defendants' request that Arthur control the retention of Simry Realty's counsel in the Foreclosure Actions: "Remind me, aren't the allegations in the other lawsuit [the Derivative Action] that *Dad cut out daughter in every single way possible, such that his conduct was untoward. Isn't that exactly what Michelle Haruvi is complaining of, such that he should not be trusted to represent her interests in this lawsuit?*" (emphasis supplied). **Exhibit 60** (Intervention Tr. 9:25-11:5). Justice Borrok granted the intervention motions over Defendants' objection (the "**Intervention Orders**") (**Exhibits 68 and 69**), rejecting their argument under BCL § 701 that Simry Realty's board (*i.e.*, Arthur) should choose Simry Realty's counsel. *Id.*

G. **The Bad Faith Bankruptcy Filing and Removal of the Derivative Action**

On Sunday, June 14, 2026—a mere five days after the Intervention Orders—Defendants caused Simry Realty to file a Chapter 11 voluntary petition in this Court. Aileen signed the Petition; Arthur signed the Corporate Resolution as "Sole Director"—the same insufficient number of directors that Justice Borrok ruled violates Simry Realty's own Articles of Incorporation. *See*

**Exhibit 27**, pp. 1-2 (Preliminary Injunction Order). The very next day, June 15, 2026, Defendants caused the Debtor to file a Notice of Removal of the Derivative Action to this Court. **Exhibit 52**.

The timing is no coincidence. The Petition was filed:

(i)     only after a series of devastating adverse rulings—the First Department's reinstatement of the Derivative Action (**Exhibit 9**), the TRO (**Exhibit 25**), the Preliminary Injunction Order (**Exhibit 27**), the First Department's denial of defendants motion to vacate the Preliminary Injunction Order (**Exhibit 29**), orders directing Defendants to produce documents and motions for contempt (**Exhibits 33, 37, 46, and 47**), and the Intervention Orders (**Exhibits 68 and 69**);

(ii)    eleven days after the June 3, 2026 oral argument on the defendants' appeal of the Preliminary Injunction Order, at which the First Department appeared likely to affirm Justice Borrok's Preliminary Injunction Order (Diakos Declaration ¶ 51, **Exhibit 30**, Tr. 9:23-10:12)(Oral Argument Transcript 9:23-10:18);

(iii)   on a Sunday, the day before a scheduled Monday June 15, 2026 deposition of Aileen—a deposition the Debtor's principals plainly wished to avoid (Diakos Decl. ¶ 76-77);

(iv)    before Justice Borrok was to conduct oral argument on Michelle's second motion to compel in the Derivative Action against certain defendants therein (Diakos Declaration ¶80; **Exhibit 47**); and

(v)     at a moment when the Derivative Action was advancing toward resolution in Michelle's favor on every front.

The Debtor's own disclosures confirm the bad faith purpose. The L.B.R. 1007-2 declaration states that Simry Realty seeks Chapter 11 "[t]o break the stranglehold of protracted state court litigation that unduly interferes with the ability to pursue a mortgage restructuring or refinancing," to obtain refinancing "even over the anticipated objections of Michelle," and to "help maximize asset values and end Michelle's reign of undue influence over Simry's corporate affairs." (**Exhibit 50**, ¶¶ 8-9 at PDF 14-15) Most revealing, the declaration states: "The Debtor intends to remove all of Michelle's pending litigations to the Bankruptcy Court pursuant to Bankruptcy Rule 9027." (*Id.* ¶ 8.)

Simry Realty is, by every measure, an empty shell. It has no employees, no tenants, no

revenue, no business operations, no legitimate creditors, and no assets other than its 10% common

membership interest and a 100% preferred membership interest in Simry Holding—an interest

whose value, if any, is subsumed by $183 million in secured debt owed by other entities. Simry

Realty is not an obligor on any loans made by the foreclosing lenders. **Exhibit 50**, ¶ 13 ("Simry

itself is not a borrower or guarantor"). Its sole remaining relevance is as the nominal defendant in

the Derivative Action—the very action that Defendants seeks to bury.

This Motion is consistent with Michelle's pending motion to dismiss the bankruptcy case

under 11 U.S.C. § 1112(b) (the "**Bad Faith Filing Motion**") concurrently filed herewith. The Bad

Faith Filing Motion is hereby incorporated by reference herein as if attached hereto in full. The

same bad faith indicators that warrant dismissal of the case also independently constitute "cause"

for abstention and stay relief.

For all these reasons the Court should grant the Motion.

## ARGUMENT

## POINT I

### THE COURT SHOULD ABSTAIN FROM AND REMAND
### THE DERIVATIVE ACTION TO STATE COURT

**A. Mandatory Abstention Requires Remand Under 28 U.S.C. § 1334(c)(2)**

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court *must* abstain from hearing a proceeding

when the following elements are satisfied: (1) a timely motion is made; (2) the proceeding is based

on a state-law claim or cause of action; (3) the proceeding is "related to" a case under title 11 but

does not "arise under" title 11 or "arise in" a case under title 11; (4) the sole basis for federal

jurisdiction is 28 U.S.C. § 1334 (*i.e.*, there is no independent basis of federal jurisdiction); (5) an

action was commenced in a state forum of appropriate jurisdiction; and (6) the action can be timely

adjudicated in state court. *See Core Litig. Trust v. Apollo Global Mgmt., LLC (In re AOG*

*Entertainment, Inc.)*, 569 B.R. 563, 572 (Bankr. S.D.N.Y. 2017); *Mt. McKinley Ins. Co. v. Corning*

*Inc.*, 399 F.3d 436, 446 (2d Cir. 2005). When a party moves for abstention pursuant to 28 U.S.C. § 1334(c)(2), the party arguing in favor of the Court's retention of jurisdiction bears the burden of showing that mandatory abstention is not warranted. *Core Litig. Trust v. Apollo Global Mgmt., LLC, supra*, 569 B.R. at 572. Moreover, "Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism." *Id*. at 573 (citation omitted). "Removal jurisdiction is strictly construed in view of the significant federalism concerns it raises, and any doubts are resolved against removability." *BGC Partners, Inc. v Avison Young (Can.), Inc.*, 919 F.Supp2d 310, 313 (S.D.N.Y. 2013). Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it. *Core Litig. Trust v. Apollo Global Mgmt., LLC, supra*, 569 B.R. at 573.

Each element for mandatory abstention is established here.

### 1. Michelle Has Made a Timely Motion

This Motion is brought promptly following the removal of the Derivative Action on June 15, 2026, and within the time frame contemplated by the statute. The timeliness element is satisfied.

### 2. The Derivative Action Is Based Entirely on State-Law Claims

The Derivative Action asserts exclusively state-law claims: rescission of the Transfer under BCL § 909; breach of fiduciary duty; corporate waste; accounting; quiet title under RPAPL Article 15; slander of title; and declaratory and injunctive relief relating to a bogus capital call. (**Exhibit 1**, FAC ¶¶ 125-244.) Not a single cause of action arises under federal law. Not a single claim invokes a substantive right created by the Bankruptcy Code. The claims existed in full force for years before the Chapter 11 filing and would exist identically if the Petition were dismissed tomorrow.

***3. The Derivative Action Is Non-Core: It Is, at Most, "Related To" the Bankruptcy but Does Not "Arise Under" or "Arise In" Title 11***

The jurisdictional categories established by 28 U.S.C. § 157 are dispositive. A proceeding "arises under" title 11 if it invokes a substantive right created by the Bankruptcy Code. A proceeding "arises in" a title 11 case if it is peculiar to bankruptcy and could not exist outside it. *In re AOG Entertainment, Inc., supra,* 569 B.R. at 573-574; *In re Ebury St. Capital, LLC*, 664 B.R. 639, 647 (Bankr S.D.N.Y. 2024). The Derivative Action here satisfies neither standard. It is a classic pre-petition state-court dispute existing wholly independent of the bankruptcy.

At most, the Derivative Action is "related to" the bankruptcy case under the broad test of whether its outcome might have any "conceivable effect" on the bankrupt estate. *See In re Cody, Inc.*, 338 F.3d 89, 93 (2d Cir. 2003). But "related to" jurisdiction, standing alone, renders the proceeding non-core under 28 U.S.C. § 157(c)(1). Indeed, examining the enumerated categories of "core proceedings" in 28 U.S.C. § 157(b)(2), none encompasses the Derivative Action. It is not a claim against the estate, a counterclaim by the estate, an action to determine the validity of a lien, or any other listed core proceeding. It is a derivative action seeking to set aside a transfer that was not made in accordance with state corporate law and recover damages for breaches of fiduciary duties and aiding and abetting same—precisely the type of pre-petition state-law claims that falls outside the core proceeding category.

Because the Derivative Action is non-core, this Court may enter final judgment only if all parties consent; absent consent, it can only "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 475 (2011); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014). Michelle has not consented, and will not consent, to final adjudication by the Bankruptcy Court.

***4. There Is No Independent Basis of Federal Jurisdiction***

The fourth element is readily satisfied. The Derivative Action presents no federal

- 12 -

question—it is grounded entirely in state statutory and common law. Nor is there diversity jurisdiction. The sole basis for this Court's jurisdiction is the bankruptcy filing and the removal under 28 U.S.C. § 1334 and Fed. R. Bankr. P. 9027.

### 5. *The Action Was Commenced in a State Forum of Appropriate Jurisdiction*

The Derivative Action was commenced in the State Court and has been actively litigated in the Commercial Division before Justice Borrok. The State Court has appropriate jurisdiction over every claim asserted.

### 6. *The Action Can Be Timely Adjudicated in State Court*

The Derivative Action is ready for advanced proceedings in State Court. Justice Borrok has presided over this matter since 2023 and related proceedings since 2025. The Appellate Division has already ruled on the merits, finding the claims valid and the Transfer potentially void. A preliminary injunction is in place. Notices of pendency have been extended through February 2029. **Exhibit 33**. Discovery orders have been entered. **Exhibits 35, 43, 44, 45, 47, and 48**. Michelle's request for Simry Realty to intervene in the Foreclosure Actions has been granted. **Exhibits 68 and 69.** The Derivative Action and the Injunction Action, both pending before Justice Borrok, are far advanced toward resolution. By contrast, beginning anew in this Court would require this Court to familiarize itself with a voluminous record spanning four related actions, years of motion practice, and multiple appellate proceedings -- imposing unnecessary delay on a matter the State Court is uniquely positioned to adjudicate expeditiously.

All six elements of mandatory abstention are satisfied. This Court is *required* to abstain.

## B. Permissive Abstention Under 28 U.S.C. § 1334(c)(1)

Even if the Court were to conclude that mandatory abstention does not apply, permissive abstention is warranted "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Courts in this District consider the following factors

in exercising their broad discretion: (1) the effect on the efficient administration of the estate; (2) the extent to which state-law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court; (5) the jurisdictional basis other than § 1334; (6) the degree of relatedness or remoteness to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state-law claims; (9) the burden on the bankruptcy docket; (10) the likelihood of forum shopping; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. *See In re Fasciglione,* 665 B.R. 594, 599 (Bankr. S.D.N.Y. 2024); *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002), *aff'd in part*, 338 F.3d 89 (2d Cir. 2003).

Every factor present here weights in favor of abstention.

**Effect on Estate Administration**. The Derivative Action does not impede estate administration -- it *advances* it. The action seeks to return the Simry Realty Properties to the Debtor's ownership. A ruling in Michelle's favor would transform the estate from an empty shell holding a mere 10% interest in Simry Holding (which interest is purportedly subject to over $180 million in debt) into the direct owner of the seven Manhattan properties (free and clear of such $180 million debt, as the Debtor is not an obligor of same). The Debtor, controlled by the very wrongdoers whose transfers are at issue, is litigating *against* the estate's interest by opposing rescission. No legitimate estate administration concern warrants retention of this action in this Bankruptcy Court.

**State-Law Predominance**. State law does not merely "predominate" -- it is the *exclusive* source of all claims and defenses. The action involves BCL § 909, New York fiduciary duty law, RPAPL Article 15, and New York corporate governance principles. No bankruptcy issue is presented.

**Nature of State-Law Issues**. The BCL § 909 issues and the "void versus voidable"

- 14 -

distinction are quintessential questions of state corporate law requiring expertise in New York Business Corporation Law -- an area where the Commercial Division and the Appellate Division, First Department, have particular competence. Justice Borrok has already developed a thorough understanding of these issues and, importantly, the underlying facts, across years of litigation.

**Related Proceedings in State Court**. Not only was the Derivative Action commenced and vigorously litigated in State Court, but three additional related proceedings remain pending before Justice Borrok: the Injunction Action and two Foreclosure Actions. The derivative claims are intertwined with the foreclosure proceedings, as the June 9, 2026 Intervention Orders confirm. **Exhibits 68 and 69**. Retaining one piece of this interconnected litigation in Bankruptcy Court while the remainder proceeds in State Court would fracture judicial oversight and defeat the interests of efficiency and consistency.

**No Independent Jurisdictional Basis**. As discussed, § 1334 provides the *only* basis for jurisdiction. This factor strongly favors abstention.

**Remoteness from the Bankruptcy Case**. The Derivative Action is remote from any genuine reorganization purpose. Simry Realty has no operations to reorganize, no employees to protect, no trade creditors to pay, and no business plan other than the litigation maneuvers against Michelle described in the Debtor's L.B.R. 1007-2 declaration. This bankruptcy case and the attempted removal of the Derivative Action are a flagrant and bad-faith attempt to evade Justice Borrok's rulings at all costs.

**Substance Over Form**. The removal notice cites 28 U.S.C. § 1334 and asserts a "conceivable effect" on the estate. But substance—not form—governs. The Derivative Action is a pre-petition dispute among private business partners over state corporate law rights. Calling it "related to" the bankruptcy does not transform its character. *BGC Partners, Inc. v Avison Young (Can.), Inc.*, 919 F.Supp.2d 310, 314 (S.D.N.Y. 2013) (cautioning against expansion of

proceedings beyond their proper scope; "'related to' jurisdiction, while broad, 'cannot be limitless'").

**Burden on the Bankruptcy Docket**. This Derivative Action *involves a massive record* spanning years of litigation, numerous parties, extensive discovery, multiple appeals, and claims concerning seven individual properties. Adjudicating it would impose an enormous burden on this Court's docket—a burden wholly unjustified given that Justice Borrok already possesses complete familiarity with the matter.

Indeed, despite the express requirement in Bankruptcy Rule 9027(a) that a notice of removal "must: … (C) be accompanied by a copy of all process and pleadings" (i.e. the entire docket), the Notice of Removal did not attach the entire docket, but only certain selected pleadings. Thus, even the Notice of Removal itself is defective.  As of the date the Debtor filed its bankruptcy case, *there were 550 pleadings filed in the Derivative Action*. See **Exhibit 34**.

**Forum Shopping**. This is a textbook case of forum shopping. The Petition was filed not to reorganize a business but to avoid a deposition and escape the State Court after years of adverse rulings. The L.B.R. 1007-2 declaration does not even attempt to disguise the motive: the Debtor seeks to "remove all of Michelle's pending litigations to the Bankruptcy Court" and "break the stranglehold" of state-court proceedings. **Exhibit 50**, ¶ 8. The removal was filed the very next day after the Petition—on a *Monday* following a *Sunday* bankruptcy filing and a scheduled deposition of Aileen. No credible reason explains this frantic timing.

**Jury Trial Right**. Michelle is entitled to a jury trial on certain of her legal claims, including damages for breach of fiduciary duty and slander of title. Because the proceeding is non-core and Michelle has not consented to final adjudication, the Bankruptcy Court cannot conduct a jury trial on these claims. *See* 28 U.S.C. § 157(e); *see also Stern*, 564 U.S. at 468, 499. This factor heavily favors remand.

- 16 -

**Non-Debtor Parties**. The Derivative Action primarily involves non-debtor parties: Arthur, Aileen, Hungerford, PH Realty, Jade Venture, Jade Realty, Simry Holding, the seven SPEs, FS CREIT, FS Rialto, Gary Phillips, and Shai Segev. Simry Realty is the nominal plaintiff in the Derivative Action and is aligned with the *defendants* due to Defendants' control. The overwhelming majority of parties to the dispute have no connection to the bankruptcy estate.

The weight of the factors overwhelmingly favors permissive abstention.

## C. Equitable Remand Under 28 U.S.C. § 1452(b)

Independent of abstention, the Court should remand the Derivative Action "on any equitable ground" pursuant to 28 U.S.C. § 1452(b). The standard for equitable remand is broad: the Court considers the same factors applicable to permissive abstention, and additionally weighs comity, prejudice to the involuntarily removed party, the interest of justice, and the equities of the particular case. *See In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y. 1992).

Here, equitable remand is compelled by the following considerations:

**Comity**. The New York courts have invested enormous judicial resources in this matter. The Appellate Division has issued a published decision. Justice Borrok has presided over this dispute for over three and one-half years across four related actions. Retaining this action would disregard the State Court's substantial investment of both time and resources.

**Prejudice to Michelle**. Michelle was involuntarily removed from a forum where she had achieved significant success—an Appellate Division reversal, a TRO, a preliminary injunction, intervention orders, and orders compelling discovery[4]. Forcing her to relitigate before an unfamiliar tribunal causes manifest prejudice, *particularly where the removal is designed by Defendants to impose precisely that prejudice.*

---

[4] A motion against Goldberg Weprin and certain of the defendants in the Injunction Action to compel discovery and impose sanctions for violating court discovery related orders is pending before the State Court. Diakos Declaration ¶ 74, **Exhibit 47**.

**Interest of Justice**. Justice demands that litigants not be permitted to escape adverse rulings by manufacturing federal jurisdiction through a bad faith bankruptcy filing. The interest of justice is antithetical to rewarding the strategic manipulation that Defendants have perpetrated.

**Judicial Economy**. Justice Borrok is uniquely positioned to adjudicate the Derivative Action efficiently. He has presided over the TRO hearing, the preliminary injunction hearing, multiple discovery disputes, the notice-of-pendency proceedings, and the intervention motions. He is also simultaneously overseeing the Foreclosure Actions that are inextricably linked to the derivative claims. Relitigating the Derivative Action before a new tribunal would waste judicial resources on an extraordinary scale.

### D. Bad Faith Permeates the Jurisdictional Analysis

The removal was not an exercise in legitimate forum selection. It was a *litigation weapon*: filed the day after the Petition, timed to halt Aileen's deposition and wrest the case from Justice Borrok on the eve of critical proceedings. There was no legitimate bankruptcy reason to remove the Derivative Action that seeks to *return* assets to the estate. Indeed, the Debtor's L.B.R. 1007-2 declaration at ¶ 9 makes clear that the Debtor does not intend to actually prosecute the Derivative Action and recover the title to the Simry Realty Properties. Rather, the Debtor's intent is to "cash out" (*i.e.*, extinguish) Michelle's rights in Simry Realty.

The bad faith underlying both the filing and the removal independently warrants abstention and remand. Courts have long recognized that a bankruptcy filing motivated by a desire to obtain a litigation advantage, rather than to reorganize, warrants skepticism of the resulting jurisdictional claims. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997); *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997). Here, every badge of bad faith is present: a one-asset shell entity with no legitimate creditors, no employees, no operations, the filing timed to

a string of adverse rulings, and the Petition's own admissions that the case is designed to overcome litigation "obstacles" posed by Michelle's state-court claims.

A court system that permitted this stratagem would create a roadmap for any litigant facing adverse state-court rulings: strip the corporate entity of its assets, file a Sunday-night bankruptcy petition, remove the action the next morning, and declare that the state court's years of work are now irrelevant. That is not what the Bankruptcy Code contemplates, and this Court should not countenance it.

**POINT II**

**<u>THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY</u>**

The Court should also lift the automatic stay to permit the continued prosecution of the Derivative Action and the Injunction Action in the State Court. The same facts that compel abstention and remand independently establish "cause" for stay relief under 11 U.S.C. § 362(d)(1).

**A. <u>Legal Standard</u>**

Section 362(d)(1) authorizes relief from the automatic stay "for cause." The term "cause" is deliberately left undefined, vesting the bankruptcy court with broad discretion. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Courts consider twelve non-exclusive factors: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

- 19 -

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on

the parties and the balance of harms. *Id.* at 1286. *In re 950 Meat & Grocery Corp.*, 617 B.R. 224,

228 (Bankr. S.D.N.Y. 2020) ("Not all of the factors are relevant in every case"). The movant makes

an initial showing of cause; the burden then shifts to the party opposing relief. 11 U.S.C. § 362(g).

**B. The *Sonnax* Factors Overwhelmingly Favor Stay Relief**

*1. Complete Resolution of the Issues*

The Derivative Action, if permitted to proceed, will resolve the central dispute: whether

the Transfer of the Simry Realty Properties violated BCL § 909, whether the Transfer is void, and

what relief follows. Moreover, stay relief is required in the Injunction Action so that the First

Department can decide the merits of Justice Borrok's Preliminary Injunction Order and to ensure

that Defendants will not attempt to conduct a Freeze-Out Merger of Michelle's interests, pending

the resolution of the Derivative Action. Complete resolution in the State Court is not merely

possible—it is imminent, given Justice Borrok's deep familiarity with the related cases.

*2. Lack of Connection With the Bankruptcy Case*

The Derivative Action has no meaningful connection to a legitimate bankruptcy case.

Simry Realty has no operations, no genuine creditors, and no reorganization to protect. As

discussed, the Derivative Action seeks to *return* assets to the estate—not to deplete it. Permitting

the Derivative Action and the Injunction Action to continue cannot conceivably interfere with any

proper bankruptcy purpose because there is no proper bankruptcy purpose to begin with.

*3. The Debtor as Fiduciary*

The Derivative Action involves the Debtor in a fiduciary capacity; it is a nominal defendant

on whose behalf Michelle pursues rescission. The fiduciary nature of the proceeding supports stay

relief, as the Debtor's fiduciary obligations cannot be adequately discharged when the Debtor's

- 20 -

principals and its purported "Restructuring Officer" (*i.e.*, Aileen) have an interest materially adverse to the estate. Justice Borrok recognized this at the June 9, 2026 hearing, noting that Arthur "should not be trusted to represent [Michelle's] interests" because "the allegations in the other lawsuit [are] that Dad cut out daughter in every single way possible." **Exhibit 60** (Intervention Tr. 9:25-11:3.)

### 4. Specialized Tribunal

The Commercial Division of the Supreme Court of New York is a specialized tribunal established to hear complex commercial and corporate disputes, including derivative and injunction actions, Business Corporation Law claims, and certain real property title disputes. Justice Borrok, having presided over four related proceedings for more than three years, possesses unique expertise in this matter.

### 5. The Action Primarily Involves Third Parties

The Derivative Action overwhelmingly involves non-debtor third parties. The defendants include Arthur, Aileen, Hungerford, PH Realty, the SPEs, FS CREIT, Gary Phillips, and Shai Segev. Simry Realty is the nominal defendant and is aligned with the defendants by virtue of Arthur's purported control of it. This factor strongly favors stay relief. *See In re Sonnax*, 907 F.2d at 1286.

### 6. No Prejudice to Creditors

Continued prosecution of the Derivative Action and the Injunction Action will not prejudice any legitimate creditor of the estate. Any secured debt on the Simry Realty Properties is owed by the SPEs and Arthur and Hungerford personally, and not by the Debtor. Indeed, <u>a judgment voiding the Transfer would *benefit* creditors, if any exist, by restoring assets to the estate</u>.

### 7. Judicial Economy and Readiness for Trial

The interests of judicial economy overwhelmingly favor permitting the state-court action

to proceed. Again, Justice Borrok has presided over this litigation for more than three years. He has issued detailed rulings on multiple motions, entered discovery orders, granted intervention, and overseen the foreclosure proceedings that are inextricably linked to the claims in the Derivative Action and Injunction Action. The Appellate Division has issued a published decision addressing the motion to dismiss. The parties are advanced in discovery. Forcing this matter to begin anew in an unfamiliar court would waste extraordinary judicial resources and delay resolution.

### 8. *Balance of Harms*

The balance of harms overwhelmingly favors Michelle. Indeed, in issuing the Preliminary Injunction Order, Justice Borrok found that Michelle would be irreparably harmed if Defendants were permitted to proceed with the Freeze-Out Merger – the very action that Defendants now seeks to achieve in this Court. If the stay is maintained, Michelle may be deprived of the ability to prosecute claims that the Appellate Division has validated and claims that Defendants have spent years and exhausted every conceivable stratagem to defeat. The harm to Michelle is concrete and immediate: the stay prevents her from pursuing the very rescission that would restore the Simry Realty Properties to the entity in which she is a shareholder.

Against this, the Debtor can identify no cognizable harm from stay relief. There is no business to protect, no operations to disrupt, no genuine creditors whose interests would be compromised. The only "harm" Defendants can articulate is that the Derivative Action might succeed, which is the very definition of a meritless opposition.

## C. The Bad Faith Filing of The Case Independently Constitutes "Cause" for Stay Relief

A bankruptcy filing made not to reorganize but to gain a litigation advantage and frustrate an adversary is itself "cause" for relief from the automatic stay. *See In re C-TC 9th Ave. P'ship*, *supra*, 113 F.3d at 1311; *In re SGL Carbon Corp.*, 200 F.3d 154, 165–66 (3d Cir. 1999); *In re 652 W. 160th LLC*, 330 B.R. 455, 465–66 (Bankr. S.D.N.Y. 2005). As noted *supra*, Michelle has filed

- 22 -

the Bad Faith Filing Motion seeking an order dismissing the Debtor's bankruptcy case pursuant to §1112(b) of the Bankruptcy Code, which motion is incorporated by reference herein. Cause exists to vacate the automatic stay for the same reasons set forth in the Bad Faith Filing Motion.

D. **The Transfer is Void, Not Voidable—The Stay Cannot Protect a Nullity**

A final, independent basis for stay relief merits emphasis. The Appellate Division held that if the Transfer was accomplished without the shareholder notice and vote required by BCL § 909(a), the transfers of title are "not voidable but void." *Haruvi*, 233 A.D.3d at 479. A void act is a nullity *ab initio*—it confers no rights, regardless of subsequent events, including the filing of a bankruptcy petition.

Justice Borrok recognized this consequence at the June 9, 2026 intervention hearing. When counsel for Michelle explained that "if those transfers are void, then the special purpose entities that purported to give the plaintiffs mortgages on the properties did not have the right to give those mortgages," the Court responded: "So you have a substantial interest which is at risk by virtue of the foreclosure action." **Exhibit 60** (June 9, 2026 Intervention Tr. 4:18-5:3.)

The automatic stay should not serve as a shield to entrench a void transaction. The estate's claim to the Simry Realty Properties does not depend upon, and is not enhanced by, the automatic stay. If the Transfer is void, it was void on the day of the bankruptcy filing. The stay is being misused by the Debtor's insiders to prevent the avoidance of the Transfer which the First Department has held to be potentially void. This Court should not lend its authority to that misuse.

E. **The Debtor, Through Defendants, Is Litigating Against the Estate's Interest**

Perhaps the most extraordinary feature of this case is that the Debtor—controlled by Arthur as "sole director"—is litigating *against* the estate's own interest. The Derivative Action seeks to void the Transfer and return the Simry Realty Properties to the Debtor. A successful outcome for Michelle is a successful outcome for the estate. However, Defendants, who perpetrated the

- 23 -

Transfer, control the Debtor and vehemently oppose rescission because rescission would unravel *their scheme*—to prevent Simry Realty from recovering title to the Simry Realty Properties.

Justice Borrok recognized this fundamental conflict at the intervention hearing: Arthur "should not be trusted to represent [Michelle's] interests" because the Derivative Action alleges that he "cut out daughter in every single way possible." **Exhibit 60** (Intervention Tr. 9:25-11:8.) Permitting the stay to block Michelle's prosecution of claims that would benefit the estate—at the behest of the very fiduciary whose breach is at issue—turns the automatic stay on its head.

The stay exists to protect the estate and its creditors during reorganization. It was never intended to be wielded by faithless fiduciaries to prevent the restoration of assets that Defendants improperly diverted. Relief from stay is required to prevent this perversion of the Bankruptcy Code's protections.

**CONCLUSION**

For the foregoing reasons, the Motion should be granted.

Dated: New York, New York
      July 7, 2026

**KATSKY KORINS LLP**

By:   s/ Steven H. Newman
      Steven H. Newman, Esq.
      Robert A. Abrams, Esq.
605 Third Avenue
New York, New York 10022
Tel. (212) 953-6000
Email: snewman@katskykorins.com
      rabrams@katskykorins.com

*Attorneys for Michelle Haruvi*