PACHULSKI STANG ZIEHL & JONES

Bradford J. Sandler

215.266.8904
bsandler@pszjlaw.com

LOS ANGELES
10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

NEW YORK
1700 BROADWAY, 36TH FL.
NEW YORK, NEW YORK 10019
212.561.7700

WILMINGTON
919 NORTH MARKET STREET, 17TH FLOOR,
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

HOUSTON
700 LOUISIANA STREET, STE. 4500
HOUSTON, TEXAS 77002
713.691.9385

SAN FRANCISCO
ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

November 9, 2026

***Via* ECF Filing and Email**

Hon. Philip Bentley
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

**Re: Simry Realty Corp. Case No. 26-11409 and Adv. Pro. No. 26-01059**

Dear Judge Bentley:

This firm represents Michelle Haruvi, and we write on behalf of Michelle Haruvi in response to the November 6, 2026 letter submitted by counsel for the Debtor and the Defendants (the "November 6 Letter")[1], and to update the Court on her efforts to settle

[1] While this letter will address the open issues to the parties settlement discussions, Michelle will address the allegation that the Debtor and Defendants are frustrated by the "lack of a sense of urgency" by Michelle to settle; it is feigned. By the end of October, the parties appeared to have reached a settlement in principle on all material terms, with only a few items left to be resolved. The Debtor and Defendants changed course on October 30, 2026. On Thursday, November 5, Defendants' counsel circulated a substantial redraft of the lengthy Settlement Agreement, which he described as a "rough draft," subject to comments from co-counsel and his client, preliminary only, and not a binding offer. Notwithstanding the substantial revision, Michelle's counsel reached out to Defendants' counsel to discuss the materially revised agreement within 24 hours. Michelle was prepared, and is prepared, to sign a Settlement Agreement reflecting the terms to which the parties agreed in principle at the end of October.

her claims in the above-referenced bankruptcy case and adversary proceeding (as well as the related litigation outside of this Court). Preliminarily, Michelle wants to settle and has worked diligently toward that end, and she, too, is deeply frustrated with the lack of urgency to resolve this matter, which she believed was settled in principle on all material terms until October 30, 2026. The principal reason a signed agreement is not yet in place is because at the end of October, the Debtor and the Defendants reversed course on core terms to which they had previously agreed in principle, and they now seek an extension of uncertain length without offering Michelle meaningful security. In essence, they moved from providing certainty of consideration to a potentially illusory agreement.

To be certain, this is a very complex settlement that involves the transfer of cash plus various parcels of real property that have various tax and financial consequences to each party. There are also non-Debtor, non-Defendants that the Defendants have required become a part of the agreement, even though they are providing no consideration. Furthermore, the Debtor and Defendants have reported that the settlement is conditioned on unknown positions of the Defendants' lender, Rialto. All of this has further complicated what is a very complex settlement agreement that currently is over 46 pages excluding exhibits.

After two months of extensive negotiations that led to a mutually acceptable settlement, the parties contemplated that closing would occur five (5) business days after the "Effective Approval Date" (the date on which the Approval Order (as defined in the Settlement Agreement) has been entered and the applicable stay has expired or been waived) and the settlement consideration would consist of either (a) the transfer to Michelle, subject only to certain agreed permitted title exceptions, of two properties, together with a cash payment; or (b) the transfer to Michelle, subject only to certain agreed permitted title exceptions, of one property, together with a cash payment (the cash payment in the first alternative was smaller than the cash payment in the second alternative). Under the second alternative, if the Defendants could not pay the larger cash payment as and when required under the settlement, Michelle's sister (i.e., one of the Defendants) would transfer to Michelle her 50% interest in a separate property that she and Michelle co-own, in place of Michelle transferring her 50% interest to her sister if the agreement closed as and when required.

The Defendants agreed to this structure in principle in October, but on October 30, 2026, unexpectedly reversed course on two significant points. First, they said they would no longer agree to the transfer of certain co-owned property to Michelle as security for deferred payment. Second, they said they required up to ninety days after signing to close, which they attributed to certain approvals Rialto, the Defendants' lender, had yet to give to the Debtor and Defendants, and in return they offered (i) a deposit on signing, which would be returned to them if the settlement did not proceed for reasons other than their breach, and (ii) a non-refundable additional payment if they needed to extend closing beyond 45 days after signing by up to an additional 45 days. This change in course purportedly was because of additional time needed to obtain Rialto's consent. This was a surprise to Michelle, as she was previously informed that Rialto had agreed to the transfer of certain properties as part of the settlement.

Michelle informed the Debtor and the Defendants that she was willing to agree in concept to an extension, but she sought a shorter extension period and additional protections in the settlement for the delay and potential uncertainty during the extension period. The protections Michelle sought involved standard protections in real estate transactions, including escrowed funds, termination and default provisions, and security. As of November 5, 2026, Defendants declined to place funds in escrow that would be paid to Michelle if the transaction did not close and declined to shorten the extension period.

The November 6 Letter asserts that the framework and business terms have been agreed upon (although they have not all been agreed upon), but it concedes that, although the concept of an extension was being considered, its precise length and terms were still under discussion. That concession is the heart of the open issues: the extension is a principal open point. Michelle has agreed in concept to an extension, but not to the requested length and not without protection. These are the key open points: timing of closing and payment of consideration, and security for delay to ensure against default.

Michelle does not dispute that Rialto's approval is required to release certain of the properties to be conveyed to her. But an extension of uncertain length along with a removal of certain

protections further shifts the risk of delay and incompletion to Michelle, and the question is what protection she will have while she waits. The Defendants have yet to provide a satisfactory answer: they refuse to transfer the previously agreed-upon co-owned property to Michelle if they cannot fund the cash consideration, and, as of this past Thursday, they again declined her requests that funds be placed in escrow for her benefit should the closing not occur and that the extension period be shortened. The November 6 Letter states that the Debtor and the Defendants are willing to pay cash and forfeit significant monies and litigation rights if Rialto's approval cannot be timely obtained. Michelle would welcome an agreement that gives that statement concrete effect, and given that lack of control, security is all the more important.

To reiterate, two primary issues remain in dispute so the settlement is not illusory:

(1) Timing. The parties have not agreed on the time needed prior to closing for the Debtor to provide the agreed-upon consideration, including any approvals from Rialto and the terms of any extensions of the closing date.

(2) Protection. The parties have not agreed on what additional security is needed to reasonably ensure that the closing happens as and when required and that the Debtor and the Defendants do not have an incentive to default on the payment of consideration.

Michelle shares the Court's interest in concluding a settlement promptly, but is prepared to aggressively pursue her rights in Court, including complying with the terms of this Court's scheduling order. That said, she is willing to continue her good faith efforts at concluding these settlement discussions, if the two issues identified above can be resolved in a commercially reasonable way. Because part of the challenge lies in coordinating among all of the parties, she respectfully requests that the Court consider (1) directing the parties to meet in person, potentially at the Courthouse, to resolve the remaining issues in the Settlement Agreement; or (2) referring the parties to a judicial mediator to meet in person with the parties (and

Rialto), if possible, over the next week to 10 days. Rialto's participation is warranted: the November 6 Letter itself underscores Rialto's role and they should be involved in these settlement discussions. Rialto's counsel is therefore copied on this letter.

Respectfully yours,

/s/ Bradford J. Sandler

Bradford J. Sandler

| | | |
|---|---|---|
| cc: | Kevin J. Nash, Esq. | *Via* ECF Filing and Email |
| | Keith Brandofino, Esq. | *Via* ECF Filing and Email |
| | Annie Wells, Esq. | *Via* ECF Filing and Email |
| | Joanna Diakos Kordalis, Esq. | *Via* ECF Filing and Email |
| | Jennifer Gonzalez, Esq. | *Via* ECF Filing and Email |
| | Brian Rich, Esq. | *Via* Email |
| | All Other Counsel of Record | *Via* ECF Filing |